257 N.J. Super. 324 (1992)
608 A.2d 440
JOHN P. IBELLI, PLAINTIFF,
v.
THOMAS L. MALOOF AND BELMED ADVERTISING, INC., A NEW JERSEY CORPORATION, DEFENDANTS/THIRD-PARTY PLAINTIFFS,
v.
BELMED ADVERTISING, INC., A NEW YORK CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
March 16, 1992.
*326 Robert M. Tosti, for plaintiff and for third-party defendant.
Arthur H. Miller, for defendants/third-party plaintiffs.

OPINION
ARTHUR J. LESEMANN, J.S.C.
A motion to dismiss a third-party complaint for lack of personal jurisdiction in this corporate dissolution case has led to a request for the award of counsel fees under N.J.S.A. 2A:15-59.1, the so called "frivolous claims" statute. The application raises issues which have not yet been fully resolved under that relatively new enactment.
The complaint alleged that plaintiff Ibelli and defendant Maloof were the sole shareholders in a New Jersey corporation, defendant BelMed Advertising, Inc. (BelMed). It charged that no stock of the corporation had ever been issued, that corporate meetings had not been held, that promised agreements had not been signed and that there was a dispute between the two principals as to the amount of shares to which each was *327 entitled. It sought, with other incidental relief, dissolution of the corporation.
The defendants, Maloof and BelMed, filed an answer and counterclaim against Ibelli and also filed a third-party complaint against a New York corporation owned by Ibelli, which bore the same name as the defendant's New Jersey corporation  BelMed Advertising, Inc. (For clarity, the New Jersey corporation will be referred to as "BelMed" or "BelMed New Jersey"; the New York corporation as "BelMed New York.") The counterclaim and third-party complaint alleged that plaintiff Ibelli had surreptitiously organized the New York corporation in early 1990 and diverted BelMed's business to it. It charged that between June and August, 1990, after Ibelli had his New York corporation organized and in place, he then caused the New Jersey corporation to cease operations, moved the three employees of the New Jersey firm to his New York corporation, moved over $100,000 in BelMed bank accounts to his New York operation, and thus completed his usurpation of the assets and business of BelMed. Maloof and BelMed charged that those acts constituted breach of contract and breach of Ibelli's fiduciary obligations to BelMed. They sought injunctive relief, an accounting and damages.
Ibelli's New York corporation then moved to dismiss the third-party complaint, asserting lack of personal jurisdiction over it because, it claimed, the New York corporation had done no business in New Jersey. In his certification submitted with the motion, Ibelli (who identified himself as the sole director and shareholder of the New York corporation) set out the basis of the claim:
BelMed of New York has no ties to the (S)tate of New Jersey. It has no office in New Jersey; it is incorporated under the laws of the State of New York; its registered office is in New York; its only office is in New York. BelMed of New York has no employees in New Jersey; it owns no property (real or personal) in New Jersey; it does not even have a New Jersey telephone number. BelMed of New York conducts all of its business out of its New York office.
*328 In its brief in support of the motion BelMed New York amplified those claims and concluded its argument with the following summation:
BelMed of New York employs no personnel whatsoever, including sales persons whose territories include the state of New Jersey.... The corporation transacts no business whatsoever within the borders of the (S)tate of New Jersey. No percentage of profits earned by BelMed of New York reflect activities conducted within the (S)tate of New Jersey. (emphasis added)
The answering arguments of Maloof and BelMed, sought to show sufficient "contacts" between the New York corporation and the State of New Jersey to establish this court's jurisdiction. They emphasized BelMed New York's advertising in certain periodicals that circulated in New Jersey, and they also claimed that the New York corporation had made other efforts to solicit business in New Jersey. (But they did not claim that those efforts were successful.) Finally they charged, in essence, that some of Ibelli's alleged unlawful acts which had occurred in New Jersey should be treated as the equivalent of actions by the New York corporation since they were designed to benefit BelMed New York.
BelMed New York's reply repeated the factual claims it had already submitted. The advertising stressed by Maloof and the New Jersey corporation, it said, was not sufficient to ground jurisdiction in this court:
The acts of BelMed New York in advertising in two medical marketing publications are isolated, random, and attenuated contacts which are insufficient to create general jurisdiction over this defendant.
The motion to dismiss was presented to the court on that basis. However, at oral argument something new developed. The attorney for Maloof and BelMed said that just three days earlier he had completed the deposition of a former employee of BelMed New York, who had provided information totally inconsistent with what had been claimed by the New York corporation. She (it was said) testified that BelMed New York had, and still has, just two customers which it services. One of those customers was, and is, in New Jersey, and  contrary to the claims of Ibelli and the submissions on behalf of BelMed *329 New York  throughout the period described in the third-party complaint, BelMed New York had regularly done business with that corporation in this State. Counsel also said that when he became aware of that information he asked counsel for the New York corporation to dismiss the pending motion, but that request was denied.
In response to that presentation, and when invited to explain the apparent disparity between the factual contentions he had submitted and the facts just called to the court's attention, counsel for the movant made the following startling statement:
Judge, we have an adversarial system; we have rules; we have time limits; it's not up to my client to offer information on this issue, it's up to the other side to come up and establish jurisdiction, and they haven't done it.
The long and short of that claim is that it is perfectly proper for a moving party to misrepresent facts to his adversary and to the court, and it is the obligation of the adversary to dig out the real facts and uncover the lie in the presentation made against it!
That contention violates the most fundamental precepts governing the conduct of attorneys. It is a blatant violation of R.P.C. 3.1 and 3.3, which prohibit an attorney from asserting any issue, unless he "reasonably believes that there is a basis for doing so that is not frivolous"; that prohibit a lawyer from "knowingly" making a "false statement of material fact or law" to a court; and prohibit an attorney from failing "to disclose to the tribunal a material fact with knowledge that the tribunal may tend to be misled by such failure".
In the face of that extraordinary development, the court adjourned hearing of the motion for two weeks, to permit formal submission, by certification of the claims made by Maloof and BelMed and any answer which the New York corporation might wish to submit.
The additional certifications by both sides confirmed the representations that counsel for Maloof and BelMed had made at oral argument. They established that throughout 1990, *330 BelMed New York had been dealing with and servicing one of its two principal customers in the State of New Jersey.
BelMed New York acknowledged that to be the case.[1] It offered no explanation, excuse, or apology for its misleading presentation, and the closest it came to a rationale for its conduct was an after-the-fact distinction between its actions in 1990 and those in 1991. It asserted that it had ceased doing business with the New Jersey customer in early 1991. Thus, it said, it was literally true that by the time of filing the motion to dismiss (October, 1991) it was indeed doing no business in New Jersey.
That "argument" ignores the fact that the question of sufficient contacts to ground personal jurisdiction deals with contacts at the time of the acts complained of  not when the suit is filed. See, e.g., Egan v. Fieldhouse, 139 N.J. Super. 220, 353 A.2d 148 (L.Div. 1976); Reilly v. P.J. Wolfe & Sohne, 374 F. Supp. 775 (D.N.J. 1974). But more important, it does not change the fact of misrepresentation. The presentation by BelMed New York in its motion to dismiss did not distinguish between operations in New Jersey in 1990 or 1991. It simply claimed, flatly and without qualification, that it had done no business in this state!
At that point, and before the scheduled date for further oral argument, Maloof and BelMed moved under N.J.S.A. 2A:15-59.1 to assess the New York corporation for the counsel fees it had incurred in meeting the motion to dismiss.[2] Presumably because the full factual picture which had now developed made it virtually certain that the motion would not be granted, *331 BelMed New York withdrew the motion before the date for reargument.[3]
The request for counsel fees, however, has not been withdrawn and remains before the court. BelMed New York claims the statute does not authorize the award of fees here, and the debate raises three questions as to the meaning of this relatively new statute, which already has generated substantial opinion writing. However, before turning to those issues, a review of the general provisions and policy of the "frivolous claims statute" will be helpful.

THE LANGUAGE AND POLICY OF N.J.S.A. 2A:15-59.1.
The 1988 adoption of N.J.S.A. 2A:15-59.1, represented a sharp break from (or at least a significant exception to) the prior policy in this state which, since creation of our modern court system in 1947, has barred the award of counsel fees in all but a few designated situations. See R. 4:42-9. And see the discussion by Judge Pressler in Iannone v. McHale, 245 N.J. Super. 17, 27-29, 583 A.2d 770 (App.Div. 1990). As to the policy before enactment of N.J.S.A. 2A:15-59.1, see e.g., Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167, 162 A.2d 834 (1960).
N.J.S.A. 2A:15-59.1, is based on the 1983 amendment to Federal Rule 11, and has the same purpose as that provision  the deterrence of groundless suits, claims and defenses. Iannone, supra, 245 N.J. Super. at 25, 583 A.2d 770. And see 2A Moore's Federal Practice, Par. 11.01[4] (quoting from the Advisory *332 Committee Note to the 1983 amendment to Rule 11).[4] It seeks to accomplish that objective by providing that a party "who prevails in a civil action" may be awarded "all reasonable litigation costs and reasonable attorney fees" if the judge finds "at any time during the proceedings or upon judgment" that a complaint, counterclaim, cross-claim, or defense of the non-prevailing person was frivolous."
The statute defines a claim or defense as being "frivolous" if either
(1) It was submitted "in bad faith," solely for the purpose of harassment, delay or malicious injury; or
(2) the non-prevailing party knew or should have known that the claim or defense was without any reasonable basis in law...."[5]
*333 The three issues raised by the attempt to apply the statute here are:
First, was the motion to dismiss "frivolous" within the meaning of N.J.S.A. 2A:15-59.1;
Second, was BelMed New Jersey, the "prevailing" party on that motion; and
Third, can counsel fees be awarded at this stage of the case, before the final, substantive merits of the matter are resolved.
The issues will be considered in the order stated.

A. IS A MOTION BASED ON A MISREPRESENTED SET OF FACTS "FRIVOLOUS" WITHIN THE MEANING OF N.J.S.A. 2A:15-59.1?
There is no question that, either because BelMed New York concealed the facts from its attorney, or because the attorney concealed the facts from his adversary and the court, the motion to dismiss was submitted on a distorted and misrepresented set of facts.[6] The factual presentation suggested a "close case" on the jurisdictional issue. On the premise that the New York organization had no New Jersey contacts except for occasional advertising in a periodical that circulated in this State, the motion seemed well founded and might well have been granted. At the very least, it presented a legitimate, debatable issue.
In fact, of course, when the distortion was corrected and the real facts presented, the basis for jurisdiction (and the lack of basis for the motion) was so clear that the motion was abandoned. A corporation which was regularly selling its goods in *334 this state and had one of its two customers located here is clearly subject to the jurisdiction of the courts of this State for acts such as those of which BelMed New York is accused here. See, e.g., Corporate Dev. Spec. Inc. v. Warren-Teed Pharm. Inc., 102 N.J. Super. 143, 245 A.2d 517 (App.Div. 1968).
The only conceivable argument against finding the motion "frivolous" would be an unrealistic and unjustified distinction between claims (or defenses) which are without legal basis, and those which would be legally valid if they were based on fact, but which actually rest on a misrepresented, false set of facts.
That distinction was submitted in Fagas v. Scott, 251 N.J. Super. 169, 597 A.2d 571 (L.Div. 1991), where the court concluded that
Interpreting the act ... to exempt from its penalties persons who file pleadings which state an otherwise viable cause of action which they know to be false ... would subvert the purpose of the act, which, as noted in Iannone, is to deter "baseless litigation." (251 N.J. Super. at 191, 597 A.2d 571)
The reasoning in Fagas (applied there to a complaint but equally applicable to a defense presented by motion) is sound and persuasive. Indeed, it is difficult to conceive of any rational basis, grounded in the policy of the statute or any other policy, for making such a distinction. See also, 2A Moore's Federal Practice, par. 11.02[3], describing the attorney's obligation under Rule 11 to "investigate the facts and the law prior to ... [signing] any pleading, motion or paper." (emphasis added.)
The conclusion is clear that the defense presented by BelMed New York's motion was frivolous within the meaning of the statute.

B. WAS BELMED NEW JERSEY A "PREVAILING PARTY" WITHIN THE MEANING OF N.J.S.A. 2A:15-59.1.
BelMed New York argues that there can be no award of counsel fees here because the statute authorizes such an award only to a "prevailing party." Since the court never ruled on the *335 motion to dismiss (it having been withdrawn before decision), it argues that there was no "prevailing party" here.
The question of defining "prevailing party" was adverted to in Iannone, supra, 245 N.J. Super. at 29, 583 A.2d 770, as one of the "variety of problems" which have arisen under Federal Rule 11 and which must still be decided under N.J.S.A. 2A:15-59.1. It was also referred to in Fagas, supra, 251 N.J. Super. at 191-192, 597 A.2d 571,[7] where the court commented with approval on some observations in Chernin v. Mardan Corp., 244 N.J. Super. 379, 383, 582 A.2d 847 (Ch.Div. 1990), and concluded that "even where a settlement is reached, the facts can be interpreted to demonstrate that one party has `prevailed' for purposes of the act."[8]
In Chernin, the court ultimately decided that the plaintiff (against whom the counsel fee award was sought) had acted in good faith and not "frivolously." It thus rejected the application, but before doing so, it commented on a defense similar to that urged here: that because the plaintiff had voluntarily dismissed his complaint against the defendant who now sought counsel fees, defendant could not be deemed a "prevailing party." It said that "the prevailing party need not be the `winner' of a lawsuit" and concluded that, because the plaintiff had dismissed its complaint only after defendant had demonstrated its lack of merit, the moving defendant should be treated as the "prevailing party" under N.J.S.A. 2A:15-59.1.
There undoubtedly will be cases in the future where it will be difficult to determine who (if anyone) is a "prevailing party." But this is not such a case. Here the motion to dismiss was *336 withdrawn only after the responding party had uncovered the critical fact (substantial sales in New Jersey) not disclosed by the movant. Even then, a request for voluntary withdrawal was denied and the offending party forced the adversary through an oral argument and then another round of certifications. Only at that point, when the decision to be rendered on the motion had become obvious, did BelMed New York finally recant and withdraw its motion.
The withdrawal, in short, was hardly voluntary. It was taken only to avoid an anticipated  and inevitable  defeat. It represented an acknowledgement that the adversary would prevail; and thus the adversary must be treated, accurately and realistically, as having in fact prevailed.
On the facts here, there is no question that BelMed New Jersey was, and for purposes of N.J.S.A. 2A:15-59.1 must be treated as, the "prevailing party."

C. DOES N.J.S.A. 2A:15-59.1 PERMIT THE AWARDING OF COUNSEL FEES TO THE PREVAILING PARTY ON A FRIVOLOUS MOTION BEFORE FINAL DECISION ON THE MERITS OF THE ENTIRE CASE?
Although the motion to dismiss on jurisdictional grounds was frivolous, it is of course, not clear at this time who will prevail on the merits of this case following trial. While BelMed New Jersey certainly "prevailed" on this aspect of the case, we do not yet know if it will "win" the entire case.
Since the frivolous claims statute authorizes the award of fees to "a party who prevails in a civil action," can such an award be made now, respecting the "frivolous" motion to dismiss? Or must decision await final resolution of the case to see who finally "prevails" at that time?
Although a literal reading of the statutory language tends to support the latter conclusion  the reference is to one who prevails "in a civil action", not to one prevailing on some phase of the action  there is also support within that language for a *337 broader conclusion. The reference in subsection (a) to the judge making a finding of frivolousness "at any time during the proceedings" certainly implies that one can determine who was a "prevailing party" before final judgment is entered. As noted in Evans v. Prudential, 233 N.J. Super. 652, 559 A.2d 888 (L.Div. 1989), the statutory language can be read to support either view.
But only one of those views is consistent with the policy of the statute: to deter the submission and advocacy of meritless claims and defenses.
While it is possible that BelMed New York may prevail on the final merits of this case, that would certainly not make the recent motion to dismiss on jurisdictional grounds any less frivolous. The motion would still have been baseless; it would still have been premised on factual misrepresentations; and it would still have required the opposing party to spend unnecessary time and money in meeting a "frivolous" claim. All the policy demands that underlie the frivolous claims statute, and call for the imposition of counsel fee sanctions for a motion such as that filed here, would remain unchanged and just as compelling.[9]
It is, of course, a basic canon of construction that uncertainty as to the meaning of a statute should be resolved in favor of an interpretation consistent with its underlying policy. Alexander v. New Jersey Power and Light Co., 21 N.J. 373, 378, 122 A.2d *338 339 (1956). That precept dictates an interpretation of N.J.S.A. 2A:15-59.1 which would apply it to a motion such as that filed here, regardless of the final outcome of the litigation. Accordingly, since the defense submitted (the motion to dismiss) was frivolous, and BelMed of New Jersey "prevailed" on that motion, N.J.S.A. 2A:15-59.1 calls for the award of counsel fees to BelMed New Jersey now, regardless of the final outcome of the litigation.
One final note:
In Iannone v. McHale, supra, Judge Pressler noted the danger of a possible profusion of claims for counsel fees under N.J.S.A. 2A:15-59.1 and the risk of spawning voluminous "satellite litigation" under that statute. This court, and probably other trial courts, has already seen an unjustified (but certainly not unanticipated) tendency for winning attorneys to often apply almost routinely for counsel fees, as though such an award should normally follow a determination of the merits of a case. The volume of such applications does, indeed, threaten to spawn a new field of "satellite litigation."
That concern could provide argument for a narrower construction of N.J.S.A. 2A:15-59.1 than is embodied in this opinion. On balance, however, it cannot justify an interpretation of the statute inconsistent with its underlying policy. And it should not lead a court to reject a rational application of the Frivolous Claims Statute simply to maintain an artificial volume control on counsel fee applications. Rather, it seems clear that vigilance in rejecting and discouraging unwarranted claims should focus on such issues as whether the unsuccessful party really acted frivolously, or simply lost on a bona fide, litigable issue.
NOTES
[1] BelMed New York's billings during 1990 to the New Jersey customer, Medical Resources, Inc., of Clifton totalled $26,360. As noted, that customer was one of just two accounts that BelMed New York had at the time.
[2] That application was probably premature and should have awaited resolution of the motion to dismiss. In view of subsequent events, however, the point is not significant.
[3] In advising of its withdrawal of the motion, counsel for BelMed New York (who is also counsel for plaintiff Ibelli) said that it might be resubmitted after further discovery had been conducted. It is not clear how such "discovery" could produce a basis for the otherwise baseless motion now withdrawn. The statement, made without substantiation or detail, adds nothing to the issue now before the court.
[4] As discussed in Iannone, however, the format of Rule 11 is quite different from N.J.S.A. 2A:15-59.1. Rule 11 is framed as an elaboration upon a longstanding Federal Rule (original Rule 11) which deals with an attorney's required certification as to the bona fides of any pleading, motion, or other paper filed by the attorney. (New Jersey's counterpart of the original Rule 11 is R. 1:4-8.) The 1983 amendment added the counsel fee sanction to Rule 11 as a penalty for violation of the certification requirement. N.J.S.A. 2A:15-59.1, on the other hand, stands alone and does not expressly refer to R. 1:4-8. It also is cast in terms of sanctions against a party, while Rule 11, as noted, focuses on the acts of the attorney.
[5] The relevant portions of N.J.S.A. 2A:15-59.1 read, in their entirety, as follows:

a. A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
c. A party seeking an award under this section shall make application to the court which heard the matter....
[6] There is no claim that the misrepresentation stemmed from an innocent mistake or misunderstanding.
[7] In Fagas, the court found that the applicant for a counsel fee had actually prevailed on all issues at trial, and thus the opponent's argument on the issue of "prevailing party" was factually meritless.
[8] Chernin, in turn, had quoted from the trial court decision in Iannone v. McHale, 236 N.J. Super. 227, 230-231, 565 A.2d 422 (L.Div. 1989), which was later reversed on other grounds.
[9] Reference to Federal Rule 11 (noted in Iannone, supra, 245 N.J. Super. at 26, 583 A.2d 770 as a source of persuasive authority in construing N.J.S.A. 2A:15-59.1) also supports the view that our statutory sanctions should be available for frivolous, interlocutory motions, such as that filed here. Rule 11 expressly refers to motions as well as other pleadings. That was true from the inception of the rule, when it simply called for an attorney certification on any paper filed, but an explicit reference to motions was inserted by the 1983 amendment that added the counsel fee sanction. Rule 11 now refers to the necessity to certify "every pleading, motion, and other paper," and provides for sanctions (including the award of counsel fees) for the improper certifying of any "pleading, motion, or other paper."