768 A.2d 200 (2001)
338 N.J. Super. 42
Gregory T. SEVERINSEN, Plaintiff-Appellant,
v.
WIDENER UNIVERSITY and Widener University School of Law, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 2001.
Decided March 14, 2001.
*201 Appellant argued his cause pro se.
Donald R. Nichols, Livingston, argued the cause for respondent (Goetz, Nichols, Hereforth & Conchar, attorneys; Mr. Nichols, of counsel and on the brief).
Before Judges BAIME, WALLACE, Jr.[1] and CARCHMAN.
The opinion of the court was delivered by BAIME, P.J.A.D.
The question presented by this appeal is whether New Jersey courts may exercise personal jurisdiction over an out-of-state university based upon the university's recruitment activities in this state. Plaintiff, a law student at Widener University, brought suit in New Jersey for injuries sustained at the University's campus in Delaware. The Law Division found that Widener's contacts with New Jersey were insufficient to support plaintiff's claim of general jurisdiction. We agree and affirm the dismissal of plaintiff's complaint.

I.
Plaintiff was struck in the face by a bathroom door while a resident at Shipley Hall, a University dormitory. The dormitory was part of the on-campus housing supplied to students by Widener. Plaintiff asserted in his complaint that the door hinge was defective.
Widener moved to dismiss plaintiff's complaint for lack of personal jurisdiction. In response, plaintiff contended that Widener maintained a substantial presence in New Jersey by virtue of its recruitment activities. These activities included sending agents to New Jersey college and law school fairs, advertising in local newspapers, mailing unsolicited letters to potential students, conducting sports activities with New Jersey colleges and universities, recruiting athletes, and sponsoring alumni events.
Although Widener's motion was made prior to completion of discovery, the Law *202 Division accepted as true plaintiff's allegations concerning the nature and extent of the University's activities in New Jersey. In granting Widener's motion, the judge determined that plaintiff's cause of action did not arise out of Widener's activities in New Jersey. The judge found that Widener's contacts with New Jersey were insufficient to sustain general jurisdiction. The judge further concluded that it would offend common notions of fairness to subject Widener to jurisdiction, and that New Jersey had no overriding interest in the dispute. Plaintiff's motion for reconsideration was subsequently denied. This appeal followed.

II.
A New Jersey court may exercise personal jurisdiction over a non-resident defendant to the "outermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971); see also Bayway Refining v. State Util., 333 N.J.Super. 420, 428, 755 A.2d 1204 (App.Div.2000); Jacobs v. Walt Disney World Co., 309 N.J.Super. 443, 452, 707 A.2d 477 (App.Div.1998); R. 4:4-4(b)(1). Minimum contacts with the forum state provide the predicate for exercising personal jurisdiction over a non-resident defendant. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The nexus between the forum state and the non-resident defendant must be such "that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Ibid. (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)); see also Blakey v. Continental Airlines, 164 N.J. 38, 66, 751 A.2d 538 (2000).
If a cause of action arises directly out of a defendant's contacts with the forum state, the court's jurisdiction is "specific." Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. 106, 119, 649 A.2d 379 (1994) (citing Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322, 558 A.2d 1252 (1989)). If, however, the suit is not related directly to the defendant's contacts with the forum state, but is predicated instead on the defendant's continuous and systematic activities in the forum state, the state's exercise of jurisdiction is "general." Ibid.; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed. 2d 404, 411 n. 9 (1984). The greater measure of the contacts for general jurisdiction is deemed relevant because of the limited interest of the forum state in entertaining the coincidental litigation. Lebel v. Everglades Marina, Inc., 115 N.J. at 323, 558 A.2d 1252 (citing Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir.1987)). If the contacts are "isolated, random and attenuated," general jurisdiction will not lie. Ibelli v. Maloof, 257 N.J.Super. 324, 328, 608 A.2d 440 (Ch.Div.1992).
To assess the reasonableness of subjecting the defendant to jurisdiction, the court must undertake a "minimum contacts" analysis. Matsumoto v. Matsumoto, 335 N.J.Super. 174, 182, 762 A.2d 224 (App.Div.2000). This analysis ensures that the jurisdictional requirement of due process is met. Interlotto, Inc. v. The National Lottery Administration, 298 N.J.Super. 127, 134, 689 A.2d 148 (App. Div.), certif. denied, 151 N.J. 78, 697 A.2d 549 (1997). The minimum contacts analysis consists of two prongs. First, the court must determine whether or not minimum contacts exist at all. Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. at 122, 649 A.2d 379. Second, the court must decide "whether those minimum contacts establish jurisdiction consistent with considerations of fair play and substantial justice." Id. at 121, 649 A.2d 379; International Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. Essentially it must be determined whether the defendant has purposely availed itself of jurisdiction in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985).
*203 "`The quality and nature of the [defendant's] activity in relation to the fair and orderly administration of the laws' must be examined on a case-by-case basis to determine if the minimum-contacts standard is satisfied." Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 470, 508 A.2d 1127 (1986)(quoting International Shoe Co. v. Washington, 326 U.S. at 319, 66 S.Ct. at 159-60, 90 L.Ed. at 103-04). Therefore, even where there are "continuous and systematic" contacts, general jurisdiction may be denied if subjecting the defendant to suit in the forum state does not comply with fair play and substantial justice. Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. at 120, 649 A.2d 379; Maro v. Potash, 220 N.J.Super. 90, 98, 531 A.2d 407 (Law Div.1987).
While the controlling principles can be articulated with disarming ease, the difficulty is in their application to concrete disputes. Creative Business Decisions, Inc. v. Magnum Communications, Ltd., 267 N.J.Super. 560, 567, 632 A.2d 298 (App.Div.1993). The courts continue to struggle to define the contours of due process of law that will sustain the exercise of jurisdiction. Ibid.; see also J.I. Kislak, Inc. v. Trumbull Shopping Park, Inc., 150 N.J.Super. 96, 98-99, 374 A.2d 1246 (App. Div.1977). This is particularly true with respect to the concept of general jurisdiction. It has been said that "[t]he melange of ... formulas used to justify exercises of general jurisdiction" lack coherence, and that "[v]ery little of contemporary jurisdiction theory has trickled into general jurisdiction decisions." Mary Twitchell, The Myth of General Jurisdiction, 101 Harv. L.Rev. 610, 636-37 (1988). Because the inquiry is fact-sensitive and ultimately depends upon one's view of what is fair and what is not, the courts appear to summon one line of decisions and then another to support the varying moods of their opinions. "One yearns for the certainty of autocracy, for one like a baseball umpire who would call the action fair or foul." Lebel v. Everglades Marina, Inc., 115 N.J. at 319, 558 A.2d 1252. But the cases present a myriad of factual patterns with a bewildering array of seemingly inconsistent results, and "little [ ] can be gained from an extended analysis of Supreme Court doctrine until the Court itself draws the lines as the umpire of federalism." Ibid.
Plaintiff asserts that Widener's targeted solicitation of New Jersey high school and college students through advertisement and other recruitment activities supports the exercise of general jurisdiction. In a series of decisions, we have said that a non-resident defendant's advertising and soliciting activities in New Jersey, if sufficiently systematic and continuous, may render that entity subject to general jurisdiction. See Jacobs v. Walt Disney World Co., 309 N.J.Super. at 460, 707 A.2d 477; Makopoulos v. Walt Disney World, 221 N.J.Super. 513, 517-18, 535 A.2d 26 (App. Div.1987). In these cases, the defendant, Walt Disney World, saturated the tri-state area with advertisements of its Florida resort on television and in local newspapers and magazines. We said:
By its interstate advertising, defendant may be successfully enticing people to visit its Florida resort. That some harms would follow and would result in claims in their home states, sites to which the advertising was intended to reach, was not only to be anticipated, it was predictable.
... It would seem that by its national campaign, defendant sought guests from New Jersey, it enticed them in New Jersey and, when it was effective, set the desired relationship in motion in New Jersey. Such acts may therefore be sufficient to permit jurisdiction. When the operator of a resort seeks to expand the market for its services to other states, it is not unreasonable to subject it to suit in one of those states when that service becomes the source of injury to the consumer. Thus it may well be that advertising, and particularly television advertising, can create sufficient contacts to justify in personam jurisdiction. Makopoulos v. Walt Disney World, 221 N.J.Super. at 517-18, 535 A.2d 26.
*204 In other settings, it has been said that specific targeting of the state for solicitation of business may be so pervasive as to permit the exercise of general jurisdiction over a non-resident defendant. See Rutherford v. Sherburne Corp., 616 F.Supp. 1456 (D.N.J.1985) (Vermont ski lodge subject to personal jurisdiction where its commercial advertisements were directed toward New Jersey residents); Keech v. Lapointe Machine Tool Co., 200 N.J.Super. 177, 183, 491 A.2d 10 (App.Div. 1985) (company subject to jurisdiction where sales agent whose territory included New Jersey, was represented by an authorized sales representative in-state, advertised in trade journal, and sold one machine and spare parts to New Jersey customers); Schaffer v. Granit Hotel Inc., 110 N.J.Super. 1, 264 A.2d 240 (App.Div. 1970) (jurisdiction proper where hotel solicited business through targeted advertising in ethnic newspapers); Corporation Development Specialists Inc. v. Warren-Teed Pharmaceuticals Inc., 102 N.J.Super. 143, 245 A.2d 517 (App.Div.), certif. denied, 52 N.J. 535, 247 A.2d 16 (1968) (solicitation and sales in New Jersey sufficient to establish jurisdiction).
Similar results have been reached by the federal courts. See Weintraub v. Walt Disney World Co., 825 F.Supp. 717 (E.D.Pa.1993) (general jurisdiction appropriate where defendant (1) sent agents to the forum state to visit local schools for "college relations," to search for "professional staffing," and for general "publicity," (2) advertised on local television, in newspapers, and magazines, (3) marketed products in the forum state, and (4) maintained a toll-free number for Pennsylvania residents); Cresswell v. Walt Disney Productions, 677 F.Supp. 284 (M.D.Pa.1987) (general jurisdiction appropriate where defendant (1) advertised on television and in local newspapers, (2) provided a toll-free telephone number for Pennsylvania residents, (3) regularly visited local college to recruit employees, (4) sent representatives to Philadelphia to encourage Pennsylvania citizens to visit Walt Disney World, (5) sold products in forum state; and (6) broadcast the Walt Disney channel in forum state); Gavigan v. Walt Disney World, 630 F.Supp. 148 (E.D.Pa.1986) (general jurisdiction appropriate where defendant (1) engaged in a promotional campaign at local department store, (2) maintained toll-free number, (3) advertised on local television and newspapers, and (4) implemented a promotional campaign directed at Philadelphia).
The common thread throughout these decisions upholding general jurisdiction was the non-resident defendant's purposeful availment of the forum state's laws for the pursuit of profit. In each of these cases, the defendant was a business entity seeking economic entry into New Jersey's marketplace. In contrast, the defendant in this case is an institution of higher education. It is arguable that in determining whether general jurisdiction exists the spreading of education and the selling of widgets are not equivalent. That implication can be drawn from several federal decisions on the subject.
In Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539 (3d Cir.1985), for example, the plaintiffs brought a wrongful death action against St. George's University School of Medicine, a Grenada educational institution, after their son died in the course of a school sponsored road race. They asserted general jurisdiction on the basis of St. George's "continuous and substantial" recruitment efforts in Pennsylvania. These recruitment activities included placing advertisements in the New York Times and the Wall Street Journal, two newspapers that are circulated throughout Pennsylvania. In addition, the Chancellor and Vice Chancellor of the University toured nine cities, including Philadelphia, "to gain exposure and establish credibility" among medical community constituents. While in Philadelphia, the Chancellor and Vice Chancellor appeared on radio and television programs having an audience of over 400,000 people. St. George's also established a joint international program with a Pennsylvania university *205 to serve as a "feeder" for the recruitment of international students. The Third Circuit held that these activities were not sufficient to permit the exercise of general jurisdiction over the non-resident defendant. Id. at 542. In reaching this conclusion, the Court emphasized that "[a]dvanced educational institutions typically draw their student body from numerous states, and [the plaintiffs'] theory would subject them to suit on non-forum related claims in every state where a member of the student body resides." Ibid. "[T]he fact that residents of the state apply and are accepted for admission to St. George's [was found to be] of no moment." Ibid.
The Eastern District of Pennsylvania reached the same conclusion in Gallant v. Trustees of Columbia University, 111 F.Supp.2d 638 (E.D.Pa.2000). The plaintiffs instituted a wrongful death action, alleging that a physician employed by Columbia negligently treated their son's heart condition. The plaintiffs asserted that Columbia's activities in Pennsylvania were sufficient to satisfy the minimum contacts test. These contacts included substantial recruitment activities resulting in a student body comprised of a high percentage of Pennsylvania residents, visiting professor programs, and staging revenue-generating athletic events. The district court held that Columbia did not have a sufficient nexus to Pennsylvania to subject the school to general jurisdiction. Id. at 641. While noting that Columbia's activities in Pennsylvania were greater than those of St. George's University in Gehling, the court found no evidence "demonstrat[ing] that [the non-resident defendant] ha[d] purposely directed its activities to, or availed itself of, [the forum state]." Ibid. The court stressed that "the contacts [relied upon by the plaintiffs in asserting general jurisdiction] [were] the result of Columbia's general participation in the type of interstate activity in which any nationally prominent educational institution would engage." Ibid. The court summarized its holding in the following terms:
[A]ll the contacts upon which the plaintiff relies to support the exercise of general jurisdiction over Columbia are those in which any nationally prominent university would engage. The plaintiff's theory sweeps too broadly, as it would render Columbia and any similar institution subject to general jurisdiction in most, if not all, states. Because there is nothing in the record to indicate that Columbia has purposefully directed its activities to this forum such that it would reasonably anticipate being haled into court here, the exercise of general jurisdiction is not appropriate. Id. at 643.
In Hardnett v. Duquesne University, 897 F.Supp. 920 (D.Md.1995), the plaintiff, a student at Duquesne University in Pennsylvania, was injured while attending a student-sponsored rock concert. The plaintiff brought suit in Maryland, his home state, contending that Duquesne's activities in the forum were sufficient to support the exercise of general jurisdiction. These contacts included mailing its application for admission to the plaintiff's home, granting him a scholarship, sending representatives to college fairs in Montgomery County, providing a toll-free number for Maryland students to call to obtain more information about the university, and sending recruitment videos to interested persons. The district court dismissed the plaintiff's complaint, holding that "[n]o claim for general jurisdiction [could] be constructed on this basis." Id. at 923. The court found that Duquesne's contacts with Maryland were "not sufficiently `continuous and systematic' to make [the school] susceptible to every claim that might be filed in [the forum state], including those unrelated to the transaction in this case." Ibid. The court added that even if Duquesne's activities in the forum state were sufficient to satisfy the minimum contacts test, the exercise of personal jurisdiction would not be consistent with "fair play and substantial justice." Id. at 924. The court observed, "[w]hatever argument might be made in favor of personal *206 jurisdiction over nonforum commercial establishments that advertise for Maryland customers, the same cannot be said of a nonforum university." Ibid.
Against this backdrop, we agree with the Law Division's conclusion that Widener's activities in New Jersey were not so systematic, pervasive and continuous as to support the exercise of personal jurisdiction. We are also satisfied that the exercise of personal jurisdiction over Widener would not comport with fair play and substantial justice.
The cases upon which plaintiff relies all involved ordinary commercial agreements with foreseeable economic repercussions in New Jersey. The non-resident defendants' economic entry into New Jersey was in pursuit of profit and was calculated to create an "actionable event" in the forum state. Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. at 126, 649 A.2d 379. The foreign corporations in these cases purposely sought to avail themselves of opportunities for pecuniary gain in New Jersey.
Although college recruitment activities certainly involve some elements of business activity, any impact on commerce in New Jersey is too remote to justify the exercise of general jurisdiction. While these schools undoubtedly benefit from the tuition and alumni dollars collected from the state, their recruitment efforts are not such that they "should be reasonably able to anticipate being haled into court." Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n., 819 F.2d 434, 437 (3d Cir.1987).
While perhaps some of Widener's recruitment efforts were targeted to New Jersey students, we believe that the noncommercial educational mission of the University is a salient factor weighing against the exercise of personal jurisdiction. It is arguable that institutions of higher education should be permitted to advertise and solicit students on a regional basis without being burdened by having to defend against lawsuits involving wholly unrelated transactions. It is natural that these universities and colleges will have an increased profile in the states in close proximity to their campuses. Accordingly, traditional notions of fair play and substantial justice strongly militate against holding that "a non-profit educational institution renders itself subject to service of process in every state of the union from which it may seek or attract outstanding athletes or scholars." Cassell v. Loyola Univ., 294 F.Supp. 622, 624 (E.D.Tenn. 1968). Such a decision would as well place an unreasonably onerous burden on small educational institutions throughout the nation. Ibid. We thus conclude that the Law Division was correct in dismissing plaintiff's suit.
The Law Division's order dismissing plaintiff's complaint is therefore affirmed.
NOTES
[1] Judge Wallace did not participate in oral argument. However, the parties consented to his participation in the decision subsequent to argument.