Joseph RODI, Plaintiff,

v.

SOUTHERN NEW ENGLAND SCHOOL OF LAW; Francis J. Larkin, Esq.; and David M. Prentiss, ESQ., Defendants.

Civil No. 02–3467.

United States District Court, D. New Jersey.

April 10, 2003.

William A. Riback, Esq., Camden, NJ, for Plaintiff.

Richard L. Goldstein, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, Woodland Falls Corporate Park, Cherry Hill, NJ, for Defendants.

## OPINION AND ORDER

RODRIGUEZ, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of *In Personam* Jurisdiction and for Improper Venue. Because the Court agrees that it does not have personal jurisdiction over the defendants, the Plaintiff's Complaint will be dismissed.

## I. *Factual Background and Procedural History*

Plaintiff, Joseph Rodi, is a graduate of Defendant Southern New England School of Law ("SNESL"), a law school located in Massachusetts. Plaintiff alleges that he received correspondence at his New Jersey residence from SNESL during the summer of 1997 to solicit him to attend the law school. According to Plaintiff, this solicitation, in addition to other correspondence, misled Plaintiff "into believing that Defendant had and would acquire ABA [American Bar Association] accreditation permitting Plaintiff to be recognized as an attorney in New Jersey and Pennsylvania." (Amended Complaint, ¶ 10). As a result, Plaintiff enrolled in SNESL in August 1997 as a first year law student.

In September 1997, SNESL was denied accreditation by the ABA. Plaintiff claims that SNESL made verbal assurances throughout his enrollment that SNESL would obtain accreditation. In addition, when Plaintiff considered transferring to another law school after completing his first year, Dean Prentiss sent correspondence to Plaintiff's New Bedford, Massachusetts address that Plaintiff asserts again misled him into believing that SNESL would achieve accreditation by the ABA. To date, SNESL has not been accredited.

Plaintiff filed the Complaint on July 18, 2002. The Court advised Plaintiff by letter dated July 29, 2002 that the Complaint was deficient because it failed to satisfactorily plead diversity requirements for all parties and it failed to properly plead venue. Therefore, the Court granted Plaintiff leave to file an amended complaint that would correct these deficiencies.

On August 14, 2002, Plaintiff filed an Amended Complaint. Plaintiff raises several counts against SNESL and two former deans of the law school. These claims include fraudulent inducement, breach of fiduciary duties, breach of contract and of an implied duty of good faith and fair dealing, violation of the Consumer Fraud Act, and for a continuing tort. Defendants now move for dismissal for lack of personal jurisdiction over all three defendants and for improper venue. The Court received oral arguments on April 3, 2003, at which time Plaintiff conceded that general jurisdiction was not applicable to the facts at bar and that this Court does not have personal jurisdiction over the two individual defendants. Therefore, this analysis will focus on whether the Court has specific jurisdiction over SNESL.

## II. *Personal Jurisdiction*

Once the defendant has raised a dispute as to jurisdiction, the burden falls upon the plaintiff to illustrate by a preponderance of evidence that the defendant's relationship with the forum state is sufficient for jurisdiction to lie. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir.1998). In meeting this burden, the plaintiff may not rely on the pleadings, but rather must introduce "sworn affidavits or other competent evidence." *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F.Supp.2d 332, 335 (D.N.J.2000) (citations omitted).

Whether a federal district court has personal jurisdiction over an out of state corporation is governed by the law of the state in which the court sits. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987). New Jersey's long-arm statute, N.J. Ct. R. 4:4–4(b)(1), extends jurisdiction to the full scope allowable under the due process restrictions of the Fourteenth Amendment. *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460, 508 A.2d 1127, 1131 (1986). Consequently, this analysis will seek to determine whether an

exercise of personal jurisdiction in this matter may be reconciled with the constitutional guidelines of due process as defined by the United States Supreme Court.

■ The Supreme Court has consistently announced that the central element of a jurisdictional due process evaluation must be whether the defendant has deliberately established "certain minimum contacts" such that "the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). Essential to this analysis is whether the defendant "purposefully avails" itself of the forum's benefits such that litigation there is reasonably foreseeable. "When a corporation purposefully avails itself of the privilege of conducting activities within the forum state, it has clear notice that it is subject to the suit there...." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal quotation marks omitted). Without this level of association with the forum state, it would contradict due process norms to haul a nonresident defendant into court there. *Id.* at 296, 100 S.Ct. 559.

■ The jurisdictional nexus must also be the result of intentional conduct by the defendant and not merely "random, fortuitous or attenuated contacts." *Amberson Holdings,* 110 F.Supp.2d at 334 (internal quotation marks omitted). Nor can jurisdiction lie if the contacts are found in the mere "unilateral activity of those who claim some relationship with a nonresident defendant." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Rather, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

■ Additionally, the Supreme Court has differentiated between specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In order to establish specific jurisdiction, the plaintiff must show that his cause of action arose from the defendant's forum-related activities. *Id.* at 414 n. 8, 104 S.Ct. 1868. When claiming that a district court should exercise specific jurisdiction, " 'the relationship among the defendant, the forum and the litigation' is the essential foundation" upon which this finding must rest. *Id.* (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Since Plaintiff has conceded that a general jurisdiction analysis does not apply here, the Court will focus solely on the existence or non-existence of specific jurisdiction.

■ Under the minimum contacts analysis, the Court must first "determine whether the defendant has sufficient contacts with the forum State." *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). When evaluating specific jurisdiction, "[s]o long as it creates a substantial connection with the forum, even a single act can support jurisdiction." *Id.* at 476 n. 18, 105 S.Ct. 2174.

Plaintiffs cite to *Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 558 A.2d 1252 (1989), for the proposition that it is not the number of contacts into the forum state, but rather the nature of the contact that is determinative of jurisdiction. There, the court was required to determine whether New Jersey courts had specific jurisdiction over a Florida defendant due to contacts arising from contract negotiations for the sale of a boat. *Id.* at 1253. The contacts included telephoning the buyer in New Jersey to finalize the details of the contract, mailing the contract to New Jersey for a signature in New Jersey, and receiving payment from the plaintiff, who the

defendant knew to be a New Jersey resident. *Id.* at 1256. The court concluded that the lower court did have jurisdiction over the nonresident defendant because it "purposely direct[ed] its activities to the forum, and the litigation result[ed] from alleged injuries that [arose] out of or relate[d] to those activities." *Id.* Finally, the court noted that the limited number of contacts was not conclusive because it is the nature of the contacts that controls. *Id.* Since the defendant knowingly made a false statement to induce the plaintiff to enter into the contractual relationship, the court concluded that the facts sufficiently supported specific jurisdiction. *Id.*

Plaintiffs also rely on *Maglio & Kendro, Inc. v. Superior Enerquip Corp.*, 233 N.J.Super. 388, 558 A.2d 1371 (1989), to support the claim that one contact into the forum state may suffice for a minimum contacts analysis. There, the defendant, a New Jersey corporation, contacted the plaintiff, which was a personnel consulting firm located in Wisconsin, to search for a new general manager for the defendant's Pennsylvania office. *Id.* at 1372. After the plaintiff conducted a search and screened potential candidates, the parties arranged for a meeting at the plaintiff's office in Wisconsin. *Id.* Before the meeting could take place, however, the plaintiff contacted the defendant and told him to "terminate the search." *Id.* Because the defendant failed to make payment on the plaintiff's invoices, the plaintiff filed suit in Wisconsin. *Id.* The defendant chose not to answer, thereby allowing default to be entered against it in Wisconsin courts. *Id.* at 1372–73. The plaintiff then sought to enforce the default in New Jersey courts. *Id.* at 1373. The Law Division, on reconsideration, granted summary judgment in the plaintiff's favor and the defendant appealed. *Id.*

The Appellate Division affirmed the grant of summary judgment and concluded that "there were sufficient contacts for the exercise of *in personam* jurisdiction over defendant by the courts of Wisconsin with respect to this transaction." *Id.* at 1375. In reaching this conclusion, the court stated that the action arose out of "a promise by defendant to pay for services to be performed in Wisconsin by plaintiff," and that the non-resident defendant solicited the Wisconsin plaintiff's services. *Id.*

Although Plaintiff uses *Maglio & Kendro* for the proposition that one contact is sufficient, the facts of that case are substantially different from the facts of the case presently before the Court. In *Maglio & Kendro,* the court was influenced by the fact that it was the New Jersey defendant that solicited the Wisconsin plaintiff for a contract for its services. *Id.* at 1376 ("Hence, we conclude that because defendant solicited plaintiff to perform services on defendant's behalf in Wisconsin and both parties took action in furtherance of that agreement, due process does not prevent *in personam* jurisdiction in Wisconsin in an action arising out of that very agreement."). Here, Plaintiffs have provided no evidence that it was Defendant that solicited Plaintiff's business. Rather, the evidence suggests, and it has not been disputed by Plaintiff, that Defendant was responding to a request for information from Plaintiff himself. Specifically, the letter to Plaintiff begins by stating, "Thank you for your interest in Southern New England School of Law."

Plaintiff cites to only two facts to support specific jurisdiction: a form acknowledgment letter in response to Plaintiff's inquiries about SNESL and an acceptance letter. Plaintiff's claim is that the first letter was sent into New Jersey with the intention of misleading Plaintiff into applying to the law school under the mistaken belief that it would be accredited by the ABA. Plaintiff has done no more to estab-

lish Defendant's purposeful conduct. Rather, it appears that Plaintiff sought information about SNESL; in response, Defendant sent a form letter and an application. Thus, SNESL was merely responding to actions taken by Plaintiff. Then, Plaintiff sent the completed application, along with a request to transfer credits from another law school that he had attended. In response, Plaintiff was accepted. Therefore, it appears that Plaintiff is attempting to base specific jurisdiction on the results of his own unilateral actions, rather than on the conduct of Defendant. Since Plaintiff has not identified a specific act that evidences SNESL's intention to "purposely avail itself to the privileges of conducting activities" within New Jersey, this Court cannot find that there have been sufficient minimum contacts to justify an exercise of *in personam* jurisdiction over SNESL.

■ This is not to say that the minimum contacts test would be satisfied had SNESL merely sent an unsolicited mailing into New Jersey. The second part of the minimum contacts analysis requires courts to evaluate those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (internal quotations omitted). The New Jersey Superior Court Appellate Division has held that "traditional notions of fair play and substantial justice strongly militate against holding that 'a non-profit educational institution renders itself subject to service of process in every state of the union from which it may seek or attract outstanding athletes or scholars.'" *Severinsen v. Widener University,* 338 N.J.Super. 42, 54, 768 A.2d 200, 206 (2001) (citing *Cassell v. Loyola Univ.,* 294 F.Supp. 622, 624 (E.D.Tenn.1968)).

Similarly, here, the Court concludes that subjecting an institution of higher edu-cation to jurisdiction in every state into which it grants requests for information does not comply with traditional notions of fair play and substantial justice. Although SNESL may recognize a profit from students for other states, forcing it to defend itself in courts throughout the nations places an unreasonable burden on its recruitment efforts and would eventually lead to the result that smaller universities could only accept in-state applicants. In weighing these factors, in addition to the insufficiency of the contacts presented, this Court concludes that it lacks *in personam* jurisdiction over Defendant SNESL. Having found that the Court lacks *in personam* jurisdiction, it is unnecessary to conduct further inquiry into the claim of improper venue.

Accordingly,

IT IS HEREBY ORDERED this 10th day of April, 2003 that Defendants' Motion to Dismiss for Lack of *In Personam* Jurisdiction and for Improper Venue [4] is *GRANTED;* and

IT IS FURTHER ORDERED that Plaintiffs' Complaint is *DISMISSED.*