# United States Court of Appeals
## For the First Circuit

No. 03-2502

JOSEPH RODI,

Plaintiff, Appellant,

v.

SOUTHERN NEW ENGLAND SCHOOL OF LAW ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Selya and Howard,

Circuit Judges.

Fredric J. Gross and Fredric J. Gross Law Firm on brief for appellant.
Allen N. David, Elizabeth A. Houlding and Peabody & Arnold LLP on brief for appellees.

November 10, 2004

**SELYA**, <u>Circuit Judge</u>. This is an appeal from a terse and uninformative order dismissing a nine-count civil complaint for failure to state a claim upon which relief might be granted. Because it is impossible to tell what arguments the district court found persuasive, we have canvassed the field. We conclude that the complaint states one potentially actionable claim and another that is not beyond hope of repair. Consequently, we reverse the order of dismissal in part and remand for further proceedings.

## I.  BACKGROUND

Because this is an appeal from an order under Fed. R. Civ. P. 12(b)(6), we take the facts as they are alleged in the plaintiff's complaint.[1] <u>SEC</u> v. <u>SG Ltd.</u>, 265 F.3d 42, 44 (1st Cir. 2001); <u>LaChapelle</u> v. <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998). We ignore, however, "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation." <u>Correa-Martinez</u> v. <u>Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990). Once the scene is set, we recount the travel of the case.

### A.  The Facts.

In July of 1997, plaintiff-appellant Joseph Rodi, a would-be law student who resided in New Jersey, received a

---

[1]Although the parties submitted affidavits in the district court, we eschew any reliance on the factual averments contained therein, with a few exceptions that we elucidate below. We explain why in Part II(A), <u>infra</u>.

recruitment letter from Francis J. Larkin, dean of Southern New England School of Law (SNESL). The letter stated in pertinent part that the accreditation committee of the American Bar Association (ABA) had voted to recommend SNESL for "provisional accreditation," a status that would be granted upon ratification of the recommendation by two other ABA bodies. The letter also stated that SNESL was "highly confident" of receiving the needed ratifications and that the future of the school "has never been brighter." Because the plaintiff intended to take the New Jersey bar examination, the prospect of accreditation was critically important to him; New Jersey requires bar applicants to hold law degrees from ABA-accredited institutions.

Larkin's letter ended with a pitch for enrollment. The solicitation bore fruit; the plaintiff enrolled at SNESL that month. He received a catalogue from SNESL containing, inter alia, a statement (in the same type size and font as the surrounding text) to the effect that: "The Law School makes no representation to any applicant or student that it will be approved by the American Bar Association prior to the graduation of any matriculating student." The complaint alleges that, despite the cheery optimism of Larkin's letter, the dean knew full well that SNESL had identifiable deficiencies that would almost certainly preclude ABA accreditation.

The ABA denied SNESL's application for accreditation in September of 1997. As a result, the plaintiff considered transferring to an accredited law school for his second year of study. Word of his ambivalence reached the dean's office. David M. Prentiss, who was then the acting dean, wrote to the plaintiff in order to "make sure" that he was "fully informed of the school's current status regarding ABA accreditation." That communique stated in substance that the school had improved the four areas found deficient by the ABA and that there should be "no cause for pessimism" about the school achieving accreditation before the plaintiff's forecasted graduation date.

In reliance on these and other representations — all of which the complaint says were knowingly false — the plaintiff remained at SNESL. He came to regret the choice: according to the complaint, SNESL knew, but elected not to disclose, that the ABA was highly critical of SNESL; that any faint hope of attaining accreditation depended upon a complete overhaul of the faculty, administration, curriculum, and student body; and that the level of non-compliance made the prospect of SNESL's near-term accreditation remote. To compound this mendacity, the school frustrated students' attempts to learn about the true status of the accreditation pavane.

In November of 1999 — during the plaintiff's third year of legal studies — the ABA denied SNESL's renewed application for

accreditation. SNESL failed to appeal to the ABA's House of Delegates as it previously had promised. Instead, the school cashiered half of its full-time faculty, thereby straying even further from ABA-mandated standards.

The plaintiff completed his studies in June of 2000. SNESL remained unaccredited. Notwithstanding his diploma, the plaintiff has not been able to sit for the New Jersey bar examination.

## B. **Travel of the Case**.

On July 18, 2002, the plaintiff sued SNESL, Larkin, and Prentiss in the United States District Court for the District of New Jersey. The district court dismissed that action for want of in personam jurisdiction on April 10, 2003. Rodi v. S. New Engl. Sch. of Law, 255 F. Supp. 2d 346, 351 (D.N.J. 2003). On June 9, 2003, the plaintiff, acting pro se, sued the same defendants in the United States District Court for the District of Massachusetts. Grounding jurisdiction in diversity of citizenship and the existence of a controversy in the requisite amount, 28 U.S.C. § 1332(a), his complaint incorporated copies of the Larkin and Prentiss letters and limned nine statements of claim.

We confine our discussion to the two claims that the plaintiff presses on appeal: (i) that the defendants' statements constituted actionable fraud or misrepresentation, and (ii) that SNESL's actions violated a consumer protection statute, Mass. Gen.

Laws ch. 93A, §§ 1-11.  The defendants filed a timely motion to dismiss, positing that the complaint, for a variety of reasons, failed to state a claim upon which relief could be granted.  As to the fraudulent misrepresentation count, the defendants asseverated that the "misrepresentations" were non-actionable statements of opinion; that the supposed fraud had not been alleged with the requisite particularity; that, in all events, the plaintiff's professed reliance on those statements was unreasonable; and that the statute of limitations had run.  With respect to the Chapter 93A count, the defendants averred that the complaint failed to state an actionable claim because the alleged misrepresentations were insufficient to trigger the prophylaxis of the statute, and, moreover, the complaint failed to allege that a demand letter had been sent before suit.  See Mass. Gen. Laws ch. 93A, § 9(3).

The plaintiff, still acting pro se, filed an opposition to the motion to dismiss in which he made a point-by-point rebuttal of the defendants' asseverations.  As part of his opposition, he tendered five affidavits, two additional letters, and an array of other documents.  SNESL filed a reply and, not to be outdone, proffered a welter of documents (including copies of its catalogues for the years in question).

The district court abjured oral argument and ruled on the papers.  It entered a cryptic order, providing in its entirety that the motion to dismiss should be allowed "for substantially the

reasons outlined in defendants' memorandum of law." The plaintiff promptly moved for reconsideration, suggesting, among other things, that if the district court "found the complaint's allegations too scanty, it could have granted leave to amend." The court denied the motion without comment. This counseled appeal ensued.

## II. DISCUSSION

We divide our discussion of the issues into several segments. First, we ascertain what materials are properly before us. We then proceed count by count and theory by theory. In so doing, we omit any reference to the seven counts that the plaintiff has elected not to defend on appeal.

### A. Configuring the Record.

The threshold issue here involves a determination of what legal standard the district court applied (or should have applied) in examining the pleadings before it. The defendants styled their motion as a motion to dismiss, but the parties then proffered exhibits containing information extraneous to the complaint. That presents a quandary.

The Civil Rules provide that when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). The district court's order is silent as to whether it elected to convert the motion to a motion for summary judgment. Consequently, we must

decide "whether the court actually took cognizance of [the supplemental material], or invoked Rule 56, in arriving at its decision." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 19 (1st Cir. 1992).

The state of this record is tenebrous. We do know, however, that the district court embraced the defendants' memorandum of law — and that memorandum relied upon the Rule 12(b)(6) standard, not the quite different Rule 56 standard. In the same vein, both sides have briefed the case on appeal as if Rule 12(b)(6), rather than Rule 56, controls. Under the unique circumstances of this case, considerations of fundamental fairness counsel in favor of following the parties' and the lower court's lead and testing the arguments on appeal under the jurisprudence of Rule 12(b)(6). We adopt that course.

Once that decision has been made, the standard of review becomes straightforward. Orders granting motions to dismiss under Rule 12(b)(6) engender de novo review. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 40 (1st Cir. 1998). In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003); Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 241 n.4 (1st Cir. 2002). This sometimes includes

documents referred to in the complaint but not annexed to it. <u>See</u>
<u>Coyne</u> v. <u>Cronin</u>, ___ F.3d ___, ___ (1st Cir. 2004) [No. 03-2357,
slip op. at 11]; <u>Beddall</u> v. <u>State St. Bank & Trust Co.</u>, 137 F.3d
12, 17 (1st Cir. 1998); <u>Fudge</u> v. <u>Penthouse Int'l, Ltd.</u>, 840 F.2d
1012, 1015 (1st Cir. 1988). Finally, the jurisprudence of Rule
12(b)(6) permits courts to consider matters that are susceptible to
judicial notice. <u>Colonial Mortg. Bankers</u>, 324 F.3d at 15-16;
<u>Boateng</u> v. <u>InterAmerican Univ.</u>, 210 F.3d 56, 60 (1st Cir. 2000).

Giving force to these principles, we may consider on this
appeal the facts alleged in the complaint, the Larkin and Prentiss
letters (which were annexed to it), and any matters that may be
judicially noticed. We also may consider SNESL's 1997-1998
catalogue, alleged by the plaintiff to comprise a part of the
contract between the parties, as a document fairly incorporated
into the complaint. <u>See</u> <u>Beddall</u>, 137 F.3d at 17. However, we may
not consider at this stage the array of affidavits and
miscellaneous documents proffered by the parties.

Having identified the materials that are properly before
us, we briefly address the question of affirmative defenses. On a
Rule 12(b)(6) motion, the court's inquiry sometimes may encompass
affirmative defenses. Everything depends on the record. As a
general rule, a properly raised affirmative defense can be
adjudicated on a motion to dismiss so long as (i) the facts
establishing the defense are definitively ascertainable from the

complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude. Colonial Mortg. Bankers, 324 F.3d at 16.

Against this backdrop, we examine the bases on which the district court could have predicated its decision. We take each count and each ground in turn.

**B. The Fraudulent Misrepresentation Count.**

The defendants advance a motley of potential defenses to the plaintiff's fraudulent misrepresentation claim. We address them sequentially.

**1. In General.** We start by testing the vitality of the claim as a whole. We will uphold a dismissal on this ground "only if the plaintiff's factual averments hold out no hope of recovery on any theory adumbrated in [his] complaint." Id. at 15 (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). Our task is not to decide whether the plaintiff ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In this process, the fact that the plaintiff filed the complaint pro se militates in favor of a liberal reading. See Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000) (explaining that "courts hold pro se pleadings to less demanding standards than those drafted by lawyers").

-10-

Sitting in diversity, we look to the substantive law of the forum state (here, Massachusetts) to guide our analysis. Correia v. Fitzgerald, 354 F.3d 47, 53 (1st Cir. 2003). Under Massachusetts law, a claim for misrepresentation entails a false statement of material fact made to induce the plaintiff to act and reasonably relied upon by him to his detriment. Zimmerman v. Kent, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991). The plaintiff's claim passes this screen.

As to Larkin, the complaint, read liberally, alleges the following: (i) Larkin knew that the plaintiff was a New Jersey resident who wanted to practice law there; (ii) he also knew that the plaintiff could not sit for the New Jersey bar unless he graduated from an accredited law school; (iii) he sent a letter to the plaintiff in New Jersey stating that SNESL was "highly confident" of receiving accreditation, knowing that this statement was materially false because SNESL had substantial deficiencies that would make accreditation difficult if not impossible; and (iv) the plaintiff, relying on Larkin's letter, enrolled at SNESL, paid substantial sums for tuition, and invested three years of his life in mastering its curriculum. We think that these allegations, if proven, would make out a viable claim for fraudulent misrepresentation. See Kerr v. Shurtleff, 105 N.E. 871, 872 (Mass. 1914) (holding that college committed fraudulent misrepresentation by falsely telling prospective student that it could "make [him] a

-11-

D.M.D." when student enrolled and graduated but school lacked the authority to grant the degree).

A similar analysis applies to the plaintiff's fraudulent misrepresentation claim against Prentiss. Prentiss's statement that there was "no cause for pessimism" about the prospect of near-term accreditation is materially false if there was in fact cause for pessimism due to the extent of the school's known shortcomings. The plaintiff alleges that Prentiss knowingly made this false statement in order to induce him to remain enrolled at SNESL and that he (Rodi) took the bait and relied on it to his detriment.

As pleaded, SNESL is vicariously liable for these fraudulent misrepresentations. It is reasonable to infer from the allegations contained in the complaint that Larkin and Prentiss were high-ranking employees of SNESL acting within the scope of their employment. Consequently, their misrepresentations are attributable to SNESL on respondeat superior grounds. See generally Kavanagh v. Trs. of Boston Univ., 795 N.E.2d 1170, 1174 (Mass. 2003) (citing Restatement (Third) of Agency § 2.04 (Tent. Draft No. 2, 2001)). Accordingly, the complaint, on its face, states a claim for fraudulent misrepresentation against all three defendants.

2. **Matters of Opinion**. The defendants' effort to short-circuit this claim is multifaceted. Their first counter is that

-12-

the cited statements were, at most, statements of opinion. That is true, in a sense, but it does not get the defendants very far.

A statement, though couched in terms of opinion, may constitute a statement of fact if it may reasonably be understood by the reader or listener as implying the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it). See McEneaney v. Chestnut Hill Realty Corp., 650 N.E.2d 93, 96 (Mass. App. Ct. 1995); see also Restatement (Second) of Torts § 539 (1977) (explaining that "[a] statement of opinion as to facts not disclosed [may] be interpreted . . . as an implied statement that the facts known to the maker are not incompatible with his opinion"); cf. Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997) ("A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable."). Thus, it is an actionable misrepresentation for a corporation falsely to tell investors that a specific project is "a great success" that is "proceeding smoothly . . . and better than expected" in order to keep them from pulling the plug. Stolzoff v. Waste Sys. Int'l, Inc., 792 N.E.2d 1031, 1036-37, 1042 (Mass. App. Ct. 2003). Similarly, it is an actionable misrepresentation for a car dealer to tell a buyer that he "believes" a vehicle is in "good" condition when he knows that it has significant mechanical

-13-

defects.  _Briggs_ v. _Carol Cars, Inc._, 553 N.E.2d 930, 933 (Mass. 1990).

The Restatement, favorably referenced in the Massachusetts cases, gives a stunningly appropriate example:

> [W]hen an auditor who is known to have examined the books of a corporation states that it is in sound financial condition, he may reasonably be understood to say that his examination has been sufficient to permit him to form an honest opinion and that what he has found justifies his conclusion.  The opinion thus becomes in effect a short summary of those facts.  When he is reasonably understood as conveying such a statement, he is subject to liability if he . . . has not found facts that justify the opinion, on the basis of his misrepresentation of the implied facts.

Restatement (Second) of Torts § 539, cmt. b.  The parallel is apparent.  The plaintiff's complaint alleges that the ABA has formulated certain objective criteria that inform its decisions about whether and when to accredit law schools.  It also alleges that Larkin, knowing of these criteria, wrote a letter to the plaintiff implying that the school was reasonably capable of satisfying them.  If Larkin did know of disqualifying and probably irremediable deficiencies (as the plaintiff has alleged), his statement that SNESL was "highly confident" of accreditation was actionably misleading.  Prentiss's statement that there was "no cause for pessimism" about the fate of the school's renewed accreditation application is subject to much the same analysis.

-14-

To be sure, knowing falsity is much easier to allege than to prove. Here, however, the district court jettisoned the fraudulent misrepresentation count at the pleading stage. Given the liberal standards of Rule 12(b)(6), that dismissal cannot rest on the "opinion" defense.

**3.  Failure to Plead With Particularity**.  For the most part, a civil complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  For that reason, "[g]reat specificity is ordinarily not required to survive a Rule 12(b)(6) motion."  Garita Hotel, 958 F.2d at 17.  That proposition, however, is not universally applicable.  "Cases alleging fraud — and for this purpose, misrepresentation is considered a species of fraud — constitute an exception to [it]."  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).  That exception, codified in Fed. R. Civ. P. 9(b), requires that fraud be alleged with particularity. Id. This heightened pleading standard is satisfied by an averment "of the who, what, where, and when of the allegedly false or fraudulent representation."  Id.; accord Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991); McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980).

In this instance, the defendants assert that the district court was warranted in dismissing the fraudulent misrepresentation

-15-

claim for failure to abide by these strictures. In addressing that assertion, we note that the specificity requirement extends only to the particulars of the allegedly misleading statement itself. See Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004). The other elements of fraud, such as intent and knowledge, may be averred in general terms. See Fed. R. Civ. P. 9(b).

After careful perscrutation, we deem this line of defense unavailing. The Larkin and Prentiss letters are unarguably specific as to speaker, content, context, and time. These statements are sufficient to shield the fraudulent misrepresentation count from dismissal at the pleading stage. See, e.g., Powers, 926 F.2d at 111; see also Philippe v. Shape, Inc., 688 F. Supp. 783, 786-87 (D. Me. 1988) (holding that documents affixed to complaint that contained alleged misrepresentations satisfied Rule 9(b)).

We note, however, that the complaint attributes a gallimaufry of other substantially similar statements to the defendants. We count no fewer than four such allegedly fraudulent misrepresentations: (i) that a SNESL employee had reported that the 1997 application for accreditation came "within an inch of ABA approval"; (ii) that an admissions officer proclaimed that SNESL "will be accredited"; (iii) that SNESL claimed it had received a special time waiver from the ABA because its "case [for

-16-

accreditation] was so strong"; and (iv) that if accreditation were again denied, SNESL would appeal directly to the ABA's governing body.   None of these four statements is pleaded with the particularity required under Rule 9(b).   Insofar as we can tell from the complaint, each such statement was made by an unidentified person at an unnamed place and at an unspecified time.[2]   Such gossamer allegations are patently inadequate under Rule 9(b).   See Alternative Sys. Concepts, 374 F.3d at 30; Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997).

When a claim sounding in fraud contains a hybrid of allegations, some of which satisfy the strictures of Rule 9(b) and some of which do not, an inquiring court may sustain the claim on the basis of those specific allegations that are properly pleaded. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003); Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 366 (1st Cir. 1994).  So it is here.  For that reason, we take no view either as to whether the plaintiff, on remand, should be permitted to amend his complaint to add particulars anent the other four statements or as to whether, absent an amendment, evidence of those statements may be introduced at trial in support of the allegation that the plaintiff reasonably relied on the Larkin and Prentiss

---

[2]We acknowledge that the plaintiff has provided many of the missing details concerning these statements in other filings, such as his affidavits and briefs.  Nevertheless, those documents are not eligible for consideration on this appeal.  See supra Part II(A).

letters.  In the first instance, such matters, should they arise, are for the district court.

**4.  Reasonable Reliance**.  Reasonable reliance is, of course, an element of a fraudulent misrepresentation claim under Massachusetts law.  Zimmerman, 575 N.E.2d at 76.  The defendants strive to persuade us that the disclaimer placed in the school's catalogue — disclaiming any "representation to any applicant or student that [SNESL] will be approved by the American Bar Association prior to the graduation of any matriculating student" — renders any reliance by the plaintiff on Larkin's and Prentiss's epistles unreasonable as a matter of law.  We are not convinced.

Under Massachusetts law, the reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury. Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 242 (D. Mass. 1999); Cataldo Ambul. Serv., Inc. v. City of Chelsea, 688 N.E.2d 959, 962 (Mass. 1998).  When, however, the facts alleged in the complaint preclude a finding of reasonable reliance, a court may enter an order of dismissal under Rule 12(b)(6).  See, e.g., Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 242; Saxon Theatre Corp. v. Sage, 200 N.E.2d 241, 244 (Mass. 1964).  The defendants argue that the disclaimer, incorporated by reference in the plaintiff's complaint, makes this such a case.

-18-

In mounting this argument, the defendants distort the fraudulent misrepresentation. They insist that the plaintiff's asserted injury flows from a broken promise of accreditation (i.e., that he was promised accreditation that did not occur). Since the disclaimer flatly contradicts any such representation, the defendants say, reliance on that promise was objectively unreasonable.

This argument erects, and then attacks, a straw man. As said, the plaintiff's complaint alleges that the defendants falsely implied that SNESL had the capacity to achieve near-term accreditation. This is a meaningful distinction. It is one thing for an actor to demur when asked to guarantee a third party's actions. It is quite another for an actor to mislead a person into believing that the actor itself possesses means and abilities fully within its control. Given this distinction, the defendants' reliance on the disclaimer is misplaced: inasmuch as the disclaimer does not cover the alleged misrepresentations, it cannot defeat them. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 630-631 (4th Cir. 1999) (holding that a contracting party may recover for fraud notwithstanding "specific disclaimers that do not cover the allegedly fraudulent contract-inducing representations").

It is, of course, arguable that the proof at summary judgment or at trial may show that the disclaimer does cover whatever misrepresentations (if any) were actually made. But even

-19-

if the defendants' characterization of the plaintiff's fraudulent misrepresentation claim was on the mark, we could not affirm the order of dismissal on this ground. We explain briefly.

Under Massachusetts law, "a party may not contract out of fraud." Turner v. Johnson & Johnson, 809 F.2d 90, 95 (1st Cir. 1986). With this in mind, Massachusetts courts consistently have held that disclaimers do not automatically defeat fraudulent misrepresentation claims. See, e.g., Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941); Sound Techniques, Inc. v. Hoffman, 737 N.E.2d 920, 924 (Mass. App. Ct. 2000); see also VMark Software, Inc. v. EMC Corp., 642 N.E.2d 587, 594 n.11 (Mass. App. Ct. 1994) (collecting cases).

At the motion to dismiss stage, information such as the conspicuousness of the disclaimer and the parties' discussions concerning it is largely undeveloped. These details are relevant, as the circumstances surrounding the formation of the contract will shed light upon the disclaimer's meaning and effect. See Turner, 809 F.2d at 96 (stating that when dealing with an ambiguous disclaimer, "the agreement is to some extent left undefined, and the plaintiff's understanding of the agreement logically may be colored by the defendant's prior statements, fraudulent or otherwise"). On an empty record, we would have no principled choice but to decline the defendants' invitation to hold, as a matter of law, that there is no possible set of circumstances under

which the disclaimer might prove ineffective.  See <u>V.S.H. Realty,</u> <u>Inc.</u> v. <u>Texaco, Inc.</u>, 757 F.2d 411, 418 (1st Cir. 1985) (cautioning against deciding whether an exculpatory clause precludes a misrepresentation claim "without development of a factual record").

5. **<u>Statute of Limitations</u>**.  The defendants have a final fallback position.  They assert that, even if the fraudulent misrepresentation claim is actionable, it is time-barred.  We explore this possibility.

To a limited extent, a statute of limitations defense can be considered on a Rule 12(b)(6) motion.  <u>See</u>, <u>e.g.</u>, <u>LaChapelle</u>, 142 F.3d at 509.  The key is whether the complaint and any documents that properly may be read in conjunction with it show beyond doubt that the claim asserted is out of time.  <u>Id.</u>

Massachusetts law provides that an action in tort — of which fraudulent misrepresentation is a species — "shall be commenced only within three years next after the cause of action accrues."  Mass. Gen. Laws ch. 260, § 2A.  A claim for fraudulent misrepresentation does not begin to accrue until "a plaintiff learns or reasonably should have learned of the misrepresentation." <u>Kent</u> v. <u>Dupree</u>, 429 N.E.2d 1041, 1043 (Mass. App. Ct. 1982); <u>accord</u> <u>Patsos</u> v. <u>First Albany Corp.</u>, 741 N.E.2d 841, 846 (Mass. 2001); <u>McEneaney</u>, 650 N.E.2d at 97.  In this context, courts sometimes ask when sufficient indicia of trouble — storm warnings, so to speak — should have been apparent to a reasonably prudent person.  <u>See</u>,

e.g., Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 47-48 (1st Cir. 2004); Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002).

In the case at hand, the plaintiff's complaint alleges that he learned of persistent deficiencies precluding ABA accreditation at an unspecified date in November of 1999. There are no facts alleged in the complaint that require an inference of an earlier accrual date. As of that time, then, the plaintiff should have figured out that the defendants' rodomontade about the school's capabilities and the imminence of accreditation was quite likely pie in the sky. On that basis, the plaintiff should have commenced his action no later than November of 2002 (the precise date is inconsequential, for reasons that shortly will become apparent). Because this action was not docketed until June 9, 2003, a cursory glance would appear to validate the defendants' assertion that the statute of limitations had run. See, e.g., Jolicoeur v. S. New Engl. Sch. of Law, 104 Fed. Appx. 745, 746-47 (1st Cir. 2004) (per curiam) (holding a similar action, filed by one of the plaintiff's classmates on June 18, 2003, to be time-barred).

Appearances sometimes are deceiving — and this is such an instance. Here, unlike in Jolicoeur, the plaintiff filed an antecedent suit in the District of New Jersey on July 18, 2002 — well within the putative limitations period. Although that case was dismissed on April 10, 2003, the dismissal was not on the

-22-

merits, but, rather, for want of personal jurisdiction over the named defendants (SNESL, Larkin, and Prentiss). <u>Rodi</u>, 255 F. Supp. 2d at 351.

This history is significant because, under Massachusetts law, if an action is duly commenced within the limitations period and then dismissed for "any matter of form," the plaintiff is entitled to "commence a new action for the same cause within one year after the dismissal." Mass. Gen. Laws ch. 260, § 32. The savings statute applies, inter alia, to an action originally filed and dismissed in a court of another state or in a federal district court. <u>See</u> <u>Boutiette</u> v. <u>Dickinson</u>, 768 N.E.2d 562, 563-64 (Mass. App. Ct. 2002); <u>Liberace</u> v. <u>Conway</u>, 574 N.E.2d 1010, 1012 (Mass. App. Ct. 1991).

We have no doubt that, for purposes of this savings statute, dismissals for want of personal jurisdiction are appropriately classified as dismissals arising out of matters of form. <u>Cf.</u> <u>Ciampa</u> v. <u>Beverly Airport Comm'n</u>, 650 N.E.2d 816, 817 (Mass. App. Ct. 1995) (holding that "dismissal for bringing an action in the wrong court is 'a matter of form' within the meaning of § 32"). After all, as the Supreme Judicial Court of Massachusetts wrote almost two centuries ago in describing an earlier version of the law, the legislature enacted the savings statute to ensure that "where [a] plaintiff has been defeated by some matter <u>not affecting the merits</u>, some defect or informality,

-23-

which he can remedy or avoid by a new process," the statute of limitations "shall not prevent him from doing so." Coffin v. Cottle, 33 Mass. (16 Pick.) 383, 386 (1835) (emphasis supplied). A dismissal for lack of personal jurisdiction is the paradigmatic example of a decision not on the merits that can be cured by new process in a different court. See Teva Pharm., USA, Inc. v. FDA, 182 F.3d 1003, 1008 (D.C. Cir. 1999).

That ends this aspect of the matter. This action and the earlier New Jersey action are sisters under the skin; they involve the same parties, the same events, the same nucleus of operative facts, and the same causes of action. By means of the savings statute, the plaintiff had one year from the dismissal of his timely New Jersey action — until April 10, 2004 — to file anew. He instituted the action sub judice on June 9, 2003. His fraudulent misrepresentation claim is therefore timely.

In an effort to blunt the force of the savings statute, SNESL raises the red flag of waiver. It asserts that because the plaintiff first set forth the savings statute argument in his opposition to the defendants' motion to dismiss, he is not entitled to benefit from it. SNESL's flag-waving overlooks, however, that a court asked to dismiss a complaint on statute of limitations grounds may examine not only the complaint but also such other documents as may appropriately be considered under Fed. R. Civ. P.

12(b)(6).  See Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).

Here, the facts that the plaintiff relies on to show the applicability of the savings statute (e.g., the date that he filed the original action, the nature of that action, the date it was dismissed, and the basis for the dismissal) are all susceptible to judicial notice.  See Fed. R. Evid. 201.  Those facts may, therefore, be considered in assessing the force of the limitations defense.  See Colonial Mortg. Bankers, 324 F.3d at 15-16; see also Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

SNESL's citation to Granahan v. Commonwealth, 476 N.E.2d 266 (Mass. App. Ct. 1985), does not alter this conclusion.  In a diversity case, procedure, unlike substance, is governed by federal law.  See Correia, 354 F.3d at 53 ("Federal courts sitting in diversity apply state substantive law and federal procedural rules.").  Under federal procedural precedents, there has been no waiver:  the plaintiff presented developed argumentation on the savings statute to the lower court, and thus preserved that issue

for appellate review.[3]  B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 40 (1st Cir. 2004).

To say more on this issue would be supererogatory.  At this stage of the game, the statute of limitations affords no basis for dismissal of the plaintiff's fraudulent misrepresentation claim.[4]

## C.  **The Chapter 93A Claim**.

The situation concerning the plaintiff's claim under the Massachusetts Consumer Protection Act is less clear-cut.  Before bringing suit under that statute, a plaintiff must mail to the defendant a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon." Mass. Gen. Laws ch. 93A, § 9(3).  This notification

---

[3]In all events, Granahan is materially distinguishable.  Here, the plaintiff presented his savings statute argument to the nisi prius court.  In contrast, Granahan formally raised his savings statute contention for the first time in the appellate court.  In launching that effort, Granahan relied solely on appellate argumentation, not "pleadings, affidavits, or other documents presented to the motion judge."  476 N.E.2d at 268 n.5.  The Appeals Court refused to entertain the argument.  Id. at 268.  So understood, Granahan represents nothing more than the Massachusetts equivalent of the federal courts' familiar raise-or-waive rule. See, e.g., Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) (warning that "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal").

[4]This holding depends, of course, on the plaintiff's allegation as to when he first learned of the persistent (and likely insuperable) deficiencies that precluded ABA accreditation. Should the proof on this point unfold differently, the district court is free to reexamine the date of accrual.

must be furnished no fewer than thirty days prior to the filing of suit.  Id.  The statutory notice requirement is not merely a procedural nicety, but, rather, "a prerequisite to suit." Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975).  Furthermore, "as a special element" of the cause of action, it must be alleged in the plaintiff's complaint.  Id.

In this instance, neither the plaintiff's complaint nor the documents attached thereto mention any such notification.  That is sufficient ground to justify dismissal of the Chapter 93A claim. See, e.g., City of Boston v. Aetna Life Ins. Co., 506 N.E.2d 106, 109 (Mass. 1987); Spilios v. Cohen, 647 N.E.2d 1218, 1220-21 (Mass. App. Ct. 1995); see also Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) (explaining that, in order to survive a Rule 12(b)(6) motion, a complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory").

This ruling has no effect on the plaintiff's fraudulent misrepresentation claim.  See York v. Sullivan, 338 N.E.2d 341, 346 (Mass. 1975) (explaining that "the [notice] requirement is a prerequisite to an action under [Chapter 93A, § 9], but nothing in the statute makes it a prerequisite to any other remedy available to aggrieved consumers").  Moreover, it may represent no more than a temporary victory for the defendants.  A failure to allege compliance with the statutory notice requirement is not necessarily

a death knell for a Chapter 93A claim. Massachusetts courts typically have allowed plaintiffs to amend in order to cure this kind of modest pleading defect. See, e.g., Jacobs v. Yamaha Motor Corp., 649 N.E.2d 758, 761 (Mass. 1995); Parker v. D'Avolio, 664 N.E.2d 858, 861 n.4 (Mass. App. Ct. 1996). Federal practice is no less permissive. See Fed. R. Civ. P. 15(a) (stating that leave to amend "shall be freely given when justice so requires").

Allowing an opportunity to amend is especially fitting here. Our reasons are fivefold. First, the plaintiff filed the complaint pro se, and "courts [should] endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Boivin, 225 F.3d at 43. Second, a fraudulent misrepresentation, actionable at common law, often can form the basis for a Chapter 93A claim. See, e.g., Adams v. Liberty Mut. Ins. Co., 799 N.E.2d 130, 140 n.19 (Mass. App. Ct. 2003); Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 154 (Mass. App. Ct. 1979); see also VMark Software, 642 N.E.2d at 595 (collecting cases). So here: apart from the question of notice, the plaintiff's allegations of fraudulent misrepresentation state a colorable claim for relief under Chapter 93A. Third, the plaintiff vouchsafed in his opposition to the motion to dismiss, and now reaffirms, that he did in fact furnish the statutorily required

notice.[5]  Fourth, we do not know whether the district court even focused on this defect (as we have said, the district court did not state a particularized ground for dismissing this claim).  Finally, the plaintiff, even without knowing the precise basis for the district court's order of dismissal, did seek leave to amend as part of his reconsideration request (an overture that the district court denied without any explanation).

The Supreme Court declared long ago that "the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48 (1957).  The view that the pleading of cases is a game in which every miscue should be fatal is antithetic to the spirit of the federal rules.  Cf. Fed. R. Civ. P. 1 (explaining that the federal rules designed to achieve, inter alia, the "just" resolution of disputes).  Each case is sui generis. Here, however, the circumstances cry out for affording the plaintiff a fair opportunity to replead his Chapter 93A claim. Accordingly, we direct the district court, on remand, to grant the plaintiff that opportunity.

## III.  CONCLUSION

We need go no further.  For the reasons elaborated above, we reverse the district court's order insofar as it dismisses the fraudulent misrepresentation count.  We affirm the order insofar as

---

[5]The plaintiff actually submitted the putative notice to the district court, and it is in the record on appeal.  We take no view of its sufficiency vis-à-vis the statutory requirement.

it dismisses the Chapter 93A count but direct that the plaintiff be afforded leave to amend that count.  The portion of the order dismissing the other seven counts in the complaint has not been contested, and, accordingly, we leave that portion of the order intact.

**Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion**.  **Two-thirds costs shall be taxed in favor of the plaintiff**.