# United States Court of Appeals
## For the First Circuit

---

No. 12-2141

UNITED STATES, ex rel. Chinyelu Duxbury,

Relator, Appellant,

v.

ORTHO BIOTECH PRODUCTS, L.P.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

---

Jan R. Schlichtmann for appellant.
Ethan M. Posner, with whom Patrick S. Davies, Michael M. Maya,
and Covington & Burling LLP, were on brief, for appellee.

---

June 12, 2013

---

**LYNCH, <u>Chief Judge</u>**.  This is the second appeal to reach this court in the decade-long litigation of relator Mark Duxbury's qui tam action against defendant Ortho Biotech Products, L.P. ("OBP") for alleged violations of the federal False Claims Acts ("FCA"), 31 U.S.C. §§ 3729-3733, arising from OBP's marketing of the pharmaceutical drug Procrit.  Following Mark Duxbury's death in October 2009, the district court permitted his surviving spouse, Chinyelu Duxbury, to substitute herself as relator.

Duxbury's amended complaint alleged three separate violations of the FCA arising from OBP's efforts to promote Procrit, an FDA-approved medication for the treatment of certain types of anemia, from approximately 1992 to 2003.[1]  The parties voluntarily dismissed Count II of the amended complaint prior to Duxbury's initial appeal.  Thereafter, in <u>United States ex rel.</u> <u>Duxbury</u> v. <u>Ortho Biotech Products, L.P.</u> (<u>Duxbury I</u>), 579 F.3d 13 (1st Cir. 2009), we affirmed the district court's dismissal of Count III, and certain portions of Count I, for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  <u>Id.</u> at 34.  We reversed and remanded, however, as to its determination that Duxbury's "kickback" claims from 1992 to 1998 in Count I of

_____

[1] Procrit is the brand name for epoetin alfa, an FDA-approved drug treatment for anemia caused by chemotherapy, chronic renal failure, HIV, and perioperative blood loss in certain types of surgery.

the amended complaint were not pled with sufficient particularity under Fed. R. Civ. P. 9(b).  Id. at 32.

On remand, the district court sensibly imposed limitations on the scope of Duxbury's discovery for these claims based upon its reading of Duxbury I, the FCA's statute of limitations, and the FCA provision limiting the court's subject matter jurisdiction to those claims as to which a relator has "direct and independent knowledge," 31 U.S.C. § 3730(e)(4)(A)-(B) (2006).[2]  See United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., Civil No. 03-12189-RWZ, 2010 WL 3810858 (D. Mass. Sept. 27, 2010).  At the conclusion of discovery, the parties entered a joint stipulation stating that Duxbury had not identified any admissible evidence to support the remaining Count I claims. The district court granted OBP's motion for summary judgment on that basis.  United States ex rel. Duxbury v. Ortho Biotech Prods.,

---

[2] Since November 2003, when Mark Duxbury filed his original complaint, Congress has amended the FCA's "public disclosure bar" and "original source" provisions, see Patient Protection and Affordable Care Act, Pub. L. No. 111-148, tit. X, § 10104(j)(2), 124 Stat. 119, 901-02 (2010), both of which are relevant to this appeal.  Because the parties do not address these amendments, we acknowledge but do not discuss them.  Instead, the prior language of these provisions, which remained in effect until March 22, 2010, governs this case.  See 31 U.S.C. § 3730(e)(4)(A)-(B) (2006); United States ex rel. Duxbury v. Ortho Biotech Prods., L.P. (Duxbury I), 579 F.3d 13, 16 (1st Cir. 2009); cf. Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621-25 (retaining prior language from 31 U.S.C. § 3730(e)(4)(A)-(B) (2006)).

<u>L.P.</u>, Civil No. 03-12189-RWZ, 2012 WL 3292870 (D. Mass. Aug. 13, 2012).

Duxbury now appeals, saying that the district court improperly limited the Count I kickback claims as a matter of fact and of law. We affirm.

## I.

The relevant FCA provisions, facts, and procedural history in this case are set out in some detail in <u>Duxbury I</u>, 579 F.3d at 16-21, and in the district court's numerous prior orders and opinions, <u>see, e.g.</u>, <u>United States ex rel. Duxbury</u> v. <u>Ortho Biotech Prods., L.P.</u>, 551 F. Supp. 2d 100, 102-04 (D. Mass. 2008). We narrow our present discussion to the information central to this appeal.

## A.

The FCA's qui tam provisions authorize private persons (called "relators") to bring civil enforcement actions on behalf of the United States against any person alleged to be in violation of section 3729 of the Act. 31 U.S.C. § 3730(b). Qui tam complaints are initially filed under seal, and relators must allow the government sixty days to intervene and assume primary responsibility for prosecuting the action. <u>Id.</u> § 3730(b)(2)-(3), (c). If the government declines to intervene, a relator may continue to pursue the action on the government's behalf. <u>Id.</u> § 3730(b)(4). "Either way, the relator is eligible to collect a

portion of any damages awarded."  United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 53 (1st Cir. 2009).

"Although this financial incentive encourages would-be relators to expose fraud," United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 107 (1st Cir. 2010), it also attracts "'parasitic' relators who bring FCA damages claims based on information within the public domain or that the relator did not otherwise discover," United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 727 (1st Cir. 2007) (quoting United States ex rel. S. Prawer & Co. v. Fleet Bank of Me., 24 F.3d 320, 324 (1st Cir. 1994)), overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008).  "Accordingly, Congress has amended the FCA several times 'to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior.'"  Duxbury I, 579 F.3d at 16 (quoting S. Prawer, 24 F.3d at 326).

To that end, the FCA's "public disclosure bar" provides that "[n]o court shall have jurisdiction" over a qui tam action that is based upon a prior "public disclosure of allegations or transactions" found in any of a number of statutorily specified sources.  31 U.S.C. § 3730(e)(4)(A) (2006); see Poteet, 619 F.3d at 107.  There is, however, an exception to the "public disclosure bar" for persons deemed an "original source" of the information in question.  31 U.S.C. § 3730(e)(4)(A) (2006).  To qualify as an

-5-

"original source," a relator must (1) have "direct and independent" knowledge of the information supporting her claims that (2) she "provided . . . to the Government before filing an action." Id. § 3730(e)(4)(B) (2006); see Duxbury I, 579 F.3d at 16.

B.

In 1992, OBP hired Mark Duxbury as a Product Specialist in its Western Division Oncology sales group. In that capacity, and later as Regional Key Account Specialist, Duxbury was responsible for marketing Procrit to health care providers in the western United States, particularly in the state of Washington. On July 20, 1998, OBP fired Duxbury for cause. See Duxbury v. Ortho Biotech, Inc., No. 52348-1-I, 2004 WL 938588, at *1-2 (Wash. Ct. App. May 3, 2004).

Duxbury's complaint, filed under seal in the District of Massachusetts on November 6, 2003, and amended in October 2006, alleged that OBP "engaged in a common nationwide scheme" to induce Medicare providers to submit false and fraudulent reimbursement claims for Procrit. The action was unsealed on July 12, 2005, after the United States declined to intervene following investigation. The amended complaint contained three counts, only the first of which is involved in this appeal.[3]

---

[3] Count II, which had been the focus of Duxbury's original complaint, concerned OBP's purportedly fraudulent reporting to the government of Procrit's Average Wholesale Price ("AWP"), "a benchmark used by the Medicare program for reimbursement purposes." Duxbury I, 579 F.3d at 17. Count II alleged that OBP marketed the

Count I of the amended complaint alleged that from "December 1992 to the present[4]," OBP offered "kickbacks" to healthcare providers "across the United States" to encourage them to prescribe Procrit to their patients. "These kickbacks included free Procrit, off-invoice discounts and cash in the form of rebates, consulting fees, educational grants, payments to participate in studies or trials, and advisory board honoraria." The amended complaint further alleged that these purported kickbacks "caused providers and hospitals to submit false claims for payment to Medicare for Procrit" in a number of ways.[5]

_____

"spread" between Procrit's reported AWP and its actual cost to potential purchasers, and that these purchasers in turn submitted falsely inflated claims for reimbursement to Medicare. "On June 27, 2007, the parties jointly stipulated to the dismissal of this count." Id. at 19 n.5.

Count III in the amended complaint alleged that beginning in 1997, OBP unlawfully promoted the administration of Procrit to oncology patients at levels approximately 33% above those approved by the FDA. We affirmed the district court's dismissal of Count III for lack of subject matter jurisdiction, id. at 34, and Duxbury has not challenged that decision on appeal.

[4] Duxbury has been inconsistent throughout this litigation with regard to the temporal scope of the kickback scheme alleged in Count I. And while the amended complaint states that OBP's purported kickback scheme continued through "the present," Am. Compl. ¶ 232, or until approximately October 2006, its most recent allegation concerning kickbacks is dated April 13, 2004, id. ¶ 111. Ultimately, the precise end date of the alleged scheme is irrelevant to the outcome here, and for reasons we discuss later, the district court properly limited the scope of Count I to those allegations arising before November 6, 2003 (i.e., the filing date of the original complaint).

[5] For example, Duxbury alleged that OBP gave providers "free [Procrit] that was indistinguishable from commercially available [Procrit]," and did so knowing and intending that these providers

On January 17, 2007, OBP filed its motion to dismiss the amended complaint with prejudice, which the district court granted in full on January 28, 2008. Duxbury, 551 F. Supp. 2d at 116. As to Count I, the district court found that (1) all of the amended complaint's kickback allegations had been publicly disclosed in an earlier suit, id. at 107-08; (2) Duxbury "qualifie[d] as an original source only with regard to allegations concerning the 1992-1998 time period," id. at 109 (citing Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-76 (2007)); and (3) none of the 1992 to 1998 kickback allegations had been pled with sufficient particularity under Fed. R. Civ. P. 9(b), id. at 114-116.

On February 29, 2008, the district court denied Duxbury's motion for reconsideration and he appealed.

C.

In Duxbury I, 579 F.3d 13, this court largely affirmed the district court's dismissal of the amended complaint. Like the district court, we found that the kickback allegations supporting Count I had been publicly disclosed in an earlier suit, id. at 21, and that Duxbury qualified as an "original source" only for those

---

would seek "reimbursement [from Medicare] as if the free [Procrit] had been purchased." Duxbury also alleged that OBP's cash and cash equivalent gifts caused providers to submit false and fraudulent claims under the Medicare and Medicaid anti-kickback law, 42 U.S.C. § 1320a-7b(b), as incorporated into the various healthcare reimbursement forms that they submitted, see United States ex. rel. Duxbury v. Ortho Biotech Prods., L.P., 551 F. Supp. 2d 100, 116 (D. Mass. 2008).

of his claims arising from 1992 to 1998 (<u>i.e.</u>, during his employment at OBP), <u>id.</u> at 28, 32. But we reversed the district court's determination that the allegations supporting Duxbury's claims from this period were not pled with sufficient particularity under Rule 9(b) in the amended complaint. <u>Id.</u> at 29-32.

The reasons for that determination are stated in our opinion. In short, we concluded that Duxbury had done more than merely "suggest fraud was possible." <u>Id.</u> at 29-30 (quoting <u>Rost</u>, 507 F.3d at 733). Rather, in paragraph 211 of the amended complaint, subsections a-h, Duxbury "set[] forth allegations of kickbacks provided by OBP that resulted in the submission of false claims by eight healthcare providers in the Western United States." <u>Id.</u> at 30. These providers, all located in the state of Washington, included:

> (1) St. Joseph's Hospital in Tacoma, Washington; (2) Rainier Oncology of Puyallap, Washington; (3) Memorial Clinic in Olympia, Washington; (4) Western Washington Cancer Treatment Center; (5) Mid Columbia Kidney Center in Kennewick, Washington; (6) St. Peter's Hospital in Olympia, Washington; (7) Memorial Clinic Oncology Group in Washington; (8) Swedish Hospital in Seattle, Washington.

<u>Id.</u> (citations omitted). As to each provider, the amended complaint asserted that paragraph 211's allegations were based upon Duxbury's "personal knowledge, observation and direct communications with the accounts," R. App. 60, and furnished specific "information as to the dates and amounts of the false

claims filed by these providers with the Medicare program," Duxbury I, 579 F.3d at 30.

With respect to the eight medical providers in question, the amended complaint had reasonably set forth "the who, what, where, and when of the allegedly false or fraudulent representation[s]." Id. (quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004)) (internal quotation marks omitted). Moreover, these allegations were also sufficient to support Duxbury's "claim that OBP intended to cause the submission of false claims" by these providers. Id. at 30 (emphasis omitted); see id. at 31 (describing paragraph 211's specific allegations as to OBP's efforts to induce the submission of false claims).

This court held as follows:

> Thus, we hold that the kickback claims attributable to Duxbury, from the years 1992 through 1998, satisfied Rule 9(b). As the district court has jurisdiction over these claims since Duxbury established himself as an 'original source,' we reverse the dismissal of these claims.

Id. at 32 (emphasis added). Of some importance here, Duxbury I did not dictate the appropriate contours for discovery on remand, and it explicitly left to the district court the task of resolving OBP's alternative grounds for dismissal, including its contention that "the [FCA's] statute of limitations bar[red] most of Duxbury's kickback claims." Id. at 32 n.7.

D.

On remand, OBP moved for an order clarifying that, in light of the Duxbury I decision, Duxbury's remaining Count I claims were limited both (i) temporally to an eight-month period between November 1997 and July 1998, and (ii) geographically to the eight Washington-based healthcare providers described in paragraph 211 of the amended complaint. In response, Duxbury agreed that the kickback claims accruing before November 6, 1997 were time-barred by the FCA's six-year statute of limitations. However, he contended that the appropriate time period for his remaining claims spanned from approximately November 1997 to November 2003, and that, because the amended complaint had alleged a "nationwide" kickback scheme, the scope of his discovery for these claims should not be geographically limited.

On September 27, 2010, the district court issued a memorandum of decision resolving this dispute in favor of OBP. See Duxbury, 2010 WL 3810858, at *3. As to OBP's proposed time limitation, the district court found that the law of the case established that Duxbury was only an original source for claims arising during his employment at OBP, and that the court lacked subject matter jurisdiction over any kickback claims arising after his termination on July 20, 1998. Id. at *2-3. Moreover, with respect to OBP's proposed geographic restriction, Duxbury only possessed "direct and independent knowledge" of OBP's activities in

-11-

the western United States, and so "he [was] limited to discovery pertaining to that region." Id. at *3. The district court denied Duxbury's motion for leave to appeal the September 27 order on February 3, 2011.

On June 13, 2011, the parties filed a Joint Statement limiting discovery to Duxbury's Count I claims from (i) November 6, 1997 to July 20, 1998, and from (ii) five of the eight accounts described in paragraph 211 of the amended complaint.[6] The Count I claims predicated on Duxbury's well-pled allegations as to the other three accounts had accrued before the November 6, 1997 cut-off imposed by the FCA's statute of limitations, and so could not be pursued.

At the close of the discovery period, the parties filed a stipulation with the district court stating that although they had "conferred and cooperated with each other in good faith," Duxbury

> ha[d] not identified and d[id] not possess any documents, witness testimony or other admissible evidence to support [her] remaining allegations, as limited by the Court's Order dated September 27, 2010, namely identification of a specific payment that could be considered a 'kickback' made to the accounts serviced by Mark Duxbury during November 6, 1997 to July 20, 1998.

---

[6] The remaining five accounts consisted of "St. Joseph's Hospital in Tacoma, Washington; Rainier Oncology of Puyallup, Washington; Western Washington Cancer Treatment Center in Olympia, Washington; Memorial Clinic in Olympia, Washington; and Memorial Clinical Oncology Group in Washington." R. App. 195.

-12-

R. App. 195-96.  OBP then moved for summary judgment on the basis of Duxbury's stipulation, which the district court granted on August 13, 2012.  Duxbury, 2012 WL 3292870, at *1.

Duxbury now appeals from that decision and from the September 27 order limiting the scope of her Count I discovery.

II.

We review the district court's order limiting the scope of discovery for abuse of discretion.  Asociación de Periodistas de P.R. v. Mueller, 680 F.3d 70, 77 (1st Cir. 2012).  Because trial court judges exercise broad discretion in managing the scope of discovery, In re Recticel Foam Corp., 859 F.2d 1000, 1006 (1st Cir. 1988), "we will intervene 'only upon a clear showing [that] . . . the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party,'" Asociación de Periodistas, 680 F.3d at 77 (alterations in original) (quoting Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996)).

"After reviewing the district court's evidentiary determinations and thereby settling the scope of the summary judgment record, we review the court's grant of summary judgment de novo." United States ex rel. Jones v. Brigham & Women's Hosp., 678 F.3d 72, 83 (1st Cir. 2012).  Taking the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in her favor, Ayala-Gerena, 95 F.3d at 90, summary judgment is

-13-

appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This court may affirm summary judgment on any basis apparent in the record.  <u>See, e.g.</u>, <u>Colón</u> v. <u>Tracey</u>, --- F.3d ---, 2013 WL 2129439, at *4 (1st Cir. 2013); <u>John G. Danielson, Inc.</u> v. <u>Winchester-Conant Props., Inc.</u>, 322 F.3d 26, 37 (1st Cir. 2003).

III.

Although Duxbury ultimately requests that this court reverse the district court's August 13 summary judgment order, she does not attack that order directly.  Instead, the focus of her argument on appeal is the September 27 order limiting discovery for Count I to (i) the time period of November 1997 to July 1998, and (ii) the five accounts located in the state of Washington as to which Mark Duxbury had direct and independent knowledge.

Duxbury challenges the September 27 order on two basic grounds.  First, she contends that the district court incorrectly concluded that it lacked subject matter jurisdiction over the Count I claims outside the specified parameters based upon its misreading of both the FCA's "original source" exception to the "public disclosure bar" and the Supreme Court's discussion of that exception in <u>Rockwell</u>, 549 U.S. 457.  Second, Duxbury argues that the September 27 order's discovery limitations "directly contradict[] the ruling and reasoning" of this court in <u>Duxbury I</u>

in remanding Count I's 1992 to 1998 kickback claims to the district court.

In response, OBP contends that the district court's application of the "public disclosure bar" to Count I was entirely consistent with Rockwell, emphasizing that Duxbury cites no authority supporting her contrary reading of the Supreme Court's decision. Moreover, OBP argues that even if the district court had subject matter jurisdiction over the whole of Count I, this court should affirm the September 27 order on the alternative ground that it was well within the district court's discretion to limit the scope of discovery to those Count I allegations pled with sufficient particularity under Fed. R. Civ. P. 9(b).

We do not reach our doubts as to the merits of Duxbury's first challenge to the September 27 order. Assuming arguendo that the district court had subject matter jurisdiction over all of the Count I kickback claims, we agree with OBP's alternate ground that the limitations the court imposed on Duxbury's discovery were entirely consistent with our holding in Duxbury I and within the district court's broad discretion in managing discovery.

We first dispose of Duxbury's contention that the discovery limitations imposed by the September 27 order were inconsistent with our application in Duxbury I of the more flexible Rule 9(b) standard recognized in Rost, 507 F.3d at 732-33, and adopted in the FCA precedents of this circuit, e.g., United States

ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009), and several others, see United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 509-10 (6th Cir. 2007); United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006). Just like the relator's objections in the district court, this argument ignores the particulars of our Rule 9(b) analysis in Duxbury I.

Following our opinion in Duxbury I, the only Count I claims that remained were those "attributable to [Mark] Duxbury, from the years 1992 through 1998." 579 F.3d at 32. Additionally, our decision to remand those claims to the district court was tied directly to the allegations of fraud contained in paragraph 211 of Duxbury's amended complaint. In fact, these were the only allegations that distinguished Duxbury's claims from the ones that we found to be deficient under Rule 9(b) in Rost. See id. at 29-31 (finding that Duxbury's amended complaint had not only "amply describe[d] [the] illegal practices in which" OBP had allegedly engaged, id. at 29 (quoting Rost, 507 F.3d at 732), but also "alleged facts that false claims were in fact filed by the medical providers he identified," id. at 31); cf. Rost, 507 F.3d at 732-33 (affirming dismissal of qui tam complaint for failure to "sufficiently establish that false claims were submitted for government payment in a way that satisfies the [Rule 9(b)]

-16-

particularity requirement," id. at 733); United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357-59 (11th Cir. 2006) (same).

On remand, the district court imposed reasonable limitations on the scope of discovery, which were entirely consistent with our holding in Duxbury I and with the approach endorsed by the Sixth Circuit in Bledsoe, 501 F.3d 493, on which Duxbury improvidently relies. In Bledsoe, the Sixth Circuit conducted a "paragraph-by-paragraph" review of the allegations of fraud in the relator's complaint, id. at 509, finding that only some of those allegations had been improperly dismissed by the district court pursuant to Rule 9(b), id. at 511-15. In keeping with the scope of discovery here, the Sixth Circuit held that the relator was entitled to proceed with discovery for only those claims supported by his well-pled allegations. See id. at 515, 523-24 (limiting discovery to the allegations in "paragraphs 64-67 of the [Second Amended Complaint]," and affirming dismissal of relator's remaining allegations for failure to "survive Rule 9(b) scrutiny," id. at 524).

The district court was not required to expand the scope of discovery based upon the amended complaint's bald assertions that the purported kickback scheme continued after Duxbury's termination or that it was "nationwide" in scope. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Atkins, 470 F.3d at 1359 (finding that relator's allegations of fraud as to "[facilities]

into which [he had] never stepped foot" were deficient under Rule 9(b)).  Nor did our holding in Duxbury I obligate the district court to do so.  Rather, the district court limited discovery to those allegations, contained in paragraph 211 of the amended complaint, which satisfied Rule 9(b)'s particularity requirement. That result was entirely consistent the district court's "considerable latitude" in assessing the proper scope of discovery, see Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 187 (1st Cir. 1989), and did not amount to an abuse of discretion, id. at 187-88; Asociación de Periodistas, 680 F.3d at 77-78.

At the close of the initial discovery period, Duxbury stipulated that she had not uncovered a single piece of admissible evidence to support any of her remaining Count I claims, let alone evidence to support her contention that OBP had orchestrated a "multi-year nationwide scheme" of kickbacks.  Thus, this was not a case in which evidence was discovered of a nationwide scheme, which might then have been the basis for widening discovery.

In light of this stipulation, the district court acted within its discretion in declining to issue Duxbury license to undertake a "fishing expedition" into the amended complaint's purely speculative allegations of fraud through further discovery. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 425-26 (1st Cir. 2007) (quoting McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2006)); see Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d

-18-

11, 14 (1st Cir. 1984); <u>United States ex rel. Rost</u> v. <u>Pfizer, Inc.</u>, 253 F.R.D. 11, 17 (D. Mass. 2008) (limiting relator's initial discovery on remand to "the sales and marketing region" as to which he had direct knowledge, and acknowledging that if relator's kickback allegations in that region were substantiated, and shown to be based on "national directives, the Court will expand the scope of discovery nationwide").

In support of her demand for nationwide discovery, Duxbury calls attention to our statement in <u>Duxbury I</u> that the allegations concerning the eight medical providers in paragraph 211 lent support to "a strong inference that such claims were also filed nationwide." 579 F.3d at 31. That did not deprive the district court of its discretion to limit Duxbury's initial discovery to the region in which Mark Duxbury had direct experience. <u>Rost</u>, 253 F.R.D. at 17; <u>cf.</u> <u>Atkins</u>, 470 F.3d at 1359. Moreover, any inferential support we found in <u>Duxbury I</u> for the amended complaint's nationwide allegations evaporated upon Duxbury's failure to uncover any admissible evidence to support even her more modest regional kickback claims.[7]

---

[7] At oral argument, Duxbury's counsel made an argument not raised in its initial appellate brief attributing the need for more discovery to Mark Duxbury's death in October 2009. While Mr. Duxbury's death likely complicated matters, at that point this litigation had been on going for nearly six years. That was ample time for memorializing Mr. Duxbury's testimony in an admissible form. Additionally, the purported hardship attributed to Mr. Duxbury's death is belied by the amended complaint's numerous representations that the relator was already in possession of

Having found that the discovery limitations imposed by the September 27 order were proper, we conclude that the district court did not err in granting OBP's motion for summary judgment on the basis of Duxbury's stipulation that she did not possess any evidence to support her remaining Count I claims.

IV.

The entry of summary judgment in favor of the defendant is _affirmed_.

_So ordered_.

---

documents establishing the truth of Count I's kickback claims. _See, e.g._, Am. Compl. ¶¶ 108, 109, 121-22.